EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Víctor Rivera Rivera<br>     Recurrido<br><br>           v.<br><br>Insular Wire Products, Corp.<br>   Peticionaria | Certiorari<br><br>2002 TSPR 120<br><br> 157 DPR _____ |

Número del Caso: CC-2001-685


Fecha: 16/septiembre/2002


Tribunal de Circuito de Apelaciones:
                    Circuito Regional II


Juez Ponente:
                    Hon. Jeannette Ramos Buonomo


Abogados de la Parte Peticionaria:
                    Lic. José J. Santiago Meléndez
                    Lic. Carlos A. Padilla Vélez


Abogados de la Parte Recurrida:
                    Lic. Angel Marrero Figarella
                    Lic. Valéry López Torres

Materia: Daños y Perjuicios

     Este documento constituye un documento oficial del Tribunal Supremo
     que está sujeto a los cambios y correcciones del proceso de
     compilación y publicación oficial de las decisiones del Tribunal.
     Su distribución electrónica se hace como un servicio público a la
     comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Víctor Rivera Rivera

    **Recurrido**

          v.                    CC-2001-685      Certiorari

**Insular Wire Products, Corp.**

    Peticionaria

Opinión del Tribunal emitida por el Juez Asociado SEÑOR CORRADA DEL RÍO

San Juan, Puerto Rico, a 16 de septiembre de 2002.

En el presente caso, se nos plantea como interrogante si un obrero tiene que solicitarle su reinstalación al patrono que lo despidió en violación al período de reserva, como condición para recibir los beneficios provistos en el artículo 5a de la Ley Núm. 45 de 18 de abril de 1935, según enmendada, conocida como la Ley del Sistema de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 7. Veamos.

I

EL Sr. Víctor Rivera Rivera (en lo sucesivo "el recurrido") trabajó en Insular Wire Products, Corp. (en lo sucesivo "la peticionaria") desde noviembre de 1981 hasta el 3 de febrero de 1994, fecha de su despido. Cabe indicar que, para esa fecha, el recurrido tenía 53 años de edad.

El 31 de enero de 1994, tres (3) días antes de su despido, el recurrido sufrió un accidente en su trabajo. Se cortó la mano izquierda con el filo de un tubo. Por ende, ese mismo día, se reportó al Fondo del Seguro del Estado (en lo sucesivo "el Fondo"), el cual concluyó que el recurrido debía continuar recibiendo tratamiento médico en descanso durante un (1) mes. No obstante lo anterior, el 3 de febrero de 1994, la gerencia de la peticionaria se comunicó por teléfono con el recurrido y le solicitó que se reportara de inmediato a las instalaciones de la compañía. Atemorizado de perder su empleo, ese mismo día, acudió a la empresa en donde se le solicitó dirigirse directamente a la oficina del Sr. Fernández, quien lo despidió personalmente. La peticionaria adujo que el despido se debió a la negligencia e ineficiencia del recurrido en el ejercicio de sus funciones como supervisor del departamento de tubos, ante la desaparición de mercancía dentro de ese departamento.

Nótese que, para la fecha de su despido, el recurrido se encontraba recibiendo tratamiento médico bajo el Fondo. Finalmente, el 9 de febrero de 1994, el Fondo le dio de alta sin incapacidad.

Durante el 1993, año inmediatamente anterior al despido, el recurrido devengó $23,659.27 en salarios. Luego de su despido, estuvo desempleado, por primera vez en veintitrés (23) años, hasta diciembre del 1994. Como consecuencia de su despido, perdió su plan médico y estuvo bajo tratamiento psiquiátrico durante seis (6) meses. Entre la fecha de su despido y octubre de 1995, trabajó durante tres (3) meses como ayudante de operador para la firma Bradbury, cobrando el salario mínimo. Durante ese mismo período, también trabajó

cerca de un (1) mes con su hermano en un taller de rejas, por lo cual devengó de $100.00 a $200.00 semanales, sujeto a los trabajos disponibles. A partir de octubre de 1995, el recurrido comenzó sus labores en la empresa Tres Monjitas, trabajando en la máquina de hacer galones de leche. Hasta entonces, su condición emocional no había mejorado.

El 23 de marzo de 1994, el recurrido presentó una reclamación en contra de la peticionaria alegando haber sido despedido injustificada y discriminatoriamente. Adujo que la peticionaria discriminó contra él por su edad, que lo despidió sin justa causa y que sufrió daños como consecuencia del discrimen.

Celebrado el juicio en su fondo, el TPI dictó sentencia el 7 de julio de 2000.[1] Dictaminó que, la peticionaria no demostró que el despido fue consecuencia de la alegada conducta negligente del recurrido. Por ende, concluyó que el despido fue injustificado, mas no discriminatorio. Puntualizó que, de la totalidad de la prueba presentada, no surgía que la peticionaria hubiese despedido al recurrido por motivos discriminatorios por razón de su edad. Resolvió, además, que la peticionaria violó el período de reserva de empleo dispuesto en el artículo 5a de la Ley Núm. 45, *supra*.

_____

[1] Cabe indicar que, esta es la segunda ocasión en que las partes del recurso de epígrafe comparecen ante este Tribunal. Anteriormente, se nos planteó si era apropiado utilizar el procedimiento sumario que provee la Ley Núm. 2 de 17 de octubre de 1961, 32 L.P.R.A. sec. 3118 *et seq.,* para resolver las reclamaciones del Sr. Víctor Rivera Rivera, al amparo de diferentes leyes laborales. Mediante Opinión de 24 de mayo de 1996, decretamos que la complejidad de algunas de las reclamaciones justificaba que se le concediera a Insular Wire Products, Corp. una prórroga para contestar la querella, razón por la cual devolvimos el caso al Tribunal de Primera

Por tales fundamentos, el TPI le impuso a la peticionaria la obligación de indemnizar al recurrido conforme a los remedios provistos en el artículo 5a, por ser éstos más beneficiosos para el recurrido que los dispuestos en la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. sec. 185 *et seq.*[2] En específico le ordenó el pago de $151,820.00, por concepto de salarios dejados de percibir desde la fecha del despido hasta la fecha en que dictó la sentencia, a razón de $23,660.00 anuales, sueldo que devengaba durante el año inmediatamente anterior a la fecha de su despido. También le impuso $40,000.00 por los daños y angustias mentales sufridas por el recurrido y $47,955.00 en honorarios de abogado, lo que suma un total de $239,755.00. Por último, ordenó la reinstalación del recurrido en su empleo.

Inconforme, la peticionaria recurrió oportunamente al Tribunal de Circuito de Apelaciones (TCA). Impugnó la concesión de todos los remedios del artículo 5a a favor del recurrido y cuestionó la valoración de los daños concedidos. Mediante sentencia de 15 de mayo de 2001, el TCA dictaminó que era excesiva la cuantía concedida por concepto de daños, en vista de que la prueba presentada no reflejó con precisión ni certeza razonable en qué consistió su condición emocional ni su severidad. Señaló que la prueba meramente demostró que el recurrido estuvo bajo tratamiento psiquiátrico durante seis (6) meses y que esta condición no mejoró hasta que encontró un empleo estable. Por todo lo anterior, redujo a $20,000.00 la

Instancia para la continuación de los procedimientos. *Rivera v. Insular Wire Products Corp.,* 140 D.P.R. 912 (1996).

partida de daños y, así modificada, confirmó la sentencia del TPI.

Todavía inconforme, y luego de infructuosamente solicitar reconsideración al TCA, la peticionaria comparece ante este Tribunal y plantea lo siguiente:

A.      Erró el Honorable Tribunal de [Circuito de] Apelaciones al concederle al querellante [recurrido]: el pago de salarios dejados de percibir; el resarcimiento de daños por angustias mentales; reinstalación en el empleo y honorarios de abogado, al amparo del Art. 5-A de la Ley [del Sistema] de Compensaciones por Accidentes del Trabajo, cuando éste no cumplió los requisitos exigidos por el Art. 5-A, pues nunca solicitó su reinstalación en el empleo.

B.      En la alternativa, de ser aplicable el Art. 5-A, era obligatorio deducir de la partida de salarios dejados de devengar, aquellos salarios devengados por el querellante en sus empleos posteriores, conforme reiteró recientemente este Tribunal en Hernández v. Municipio de Aguadilla, res. [el] 5 de junio de 2001[,] [154 D.P.R.___, 2001 T.S.P.R. 78, 2001 J.T.S. 81].

Expedimos auto de certiorari mediante Resolución de 26 de octubre de 2001. Perfeccionado el recurso, resolvemos.

II

La Ley Núm. 45, *supra,* provee unos remedios superiores a los del obrero que es despedido sin justa causa, al amparo de la Ley Núm. 80, *supra. Vélez Rodríguez v. Pueblo Int'l, Inc.,* 135 D.P.R. 500 (1994). La Ley Núm. 45, *supra,* además de concederle al obrero una protección económica, salvaguarda, esencialmente, su tenencia de empleo. *Íd.*

---

[2] Mediante la Ley Núm. 80, *supra,* un obrero despedido injustamente tendrá derecho al pago de una mesada, cuyo cómputo dependerá de sus años de servicio trabajando para el patrono.

Sabido es que, la Ley Núm. 45, *supra,* es también de carácter remedial. *Rivera González v. Blanco Vélez Stores, Inc.,* res. el 30 de octubre de 2001, 155 D.P.R. ___, 2001 T.S.P.R. 146, 2001 J.T.S. 151. Consagra garantías y beneficios a los obreros que hayan sufrido un accidente o incapacidad ocupacional. *Íd.* Una de estas garantías es el derecho del obrero de estar protegido en su empleo contra riesgos a su salud e integridad personal, provisto en el artículo 5a de la Ley Núm. 45, *supra,* y en el Artículo II, Sec. 16 de la Constitución del Estado Libre Asociado de Puerto Rico, 1 L.P.R.A. *Íd.*

Sobre este particular, el Secretario del Trabajo señala que "es insoslayable la necesidad de protección de su empleo que tiene el que sufre un accidente o enfermedad ocupacional que lo incapacite para trabajar, de manera que su rehabilitación y pronto regreso a sus tareas puedan ser objetivos reales." Opinión Núm. 90-5, Opiniones del Secretario Sobre Legislación Protectora del Trabajo de 9 de julio de 1990.[3]

Conforme al historial legislativo de la Ley Núm. 45, *supra*, su aprobación fue:

> [p]ara promover el bienestar de los habitantes de El Pueblo de Puerto Rico, en o referente a accidentes que causen la muerte o lesiones, o enfermedades o muerte derivadas de la ocupación de los trabajadores en el curso de su empleo; establecer el deber de los patronos en [sic] compensar a sus trabajadores o beneficiarios según se definen en esta Ley por razón de enfermedades o muerte derivadas de la ocupación, lesiones o muerte independientes de negligencia y proveer los medios y métodos para hacer efectivo este deber. P. del S. 40 de 12 de febrero de 1935.

---

[3] Véase, además, *Rivera González v. Blanco Vélez Stores, Inc.,* supra.

Por su parte, el historial legislativo de la Ley Núm. 101 de 5 de junio de 1973, enmendatoria del artículo 5a de la Ley Núm. 45, *supra*, establece:

> [e]ste proyecto de ley provee específicamente un procedimiento efectivo a utilizarse para que el trabajador que ha sufrido un accidente reclame su repuesto en su empleo original y señala las sanciones a imponerse al patrono que se negare a hacerlo. Esto es un paso adelante, ya que la ley vigente no establece procedimiento alguno a seguirse en caso de que el patrono se negare a reinstalar a dicho obrero. P. de la C. 398 de 8 de marzo de 1973.

En *Rivera González v. Blanco Vélez Stores, Inc.,* supra, señalamos que el propósito legislativo detrás de la aprobación del artículo 5a, supra, fue establecer un balance entre el interés del obrero de tener la seguridad económica de poder regresar a su empleo y el interés del patrono de evitar tener que reservarle al obrero su empleo indefinidamente. En *Carrón Lamoutte v. Compañía de Turismo,* 130 D.P.R. 70 (1992), expresamos que el propósito principal del artículo 5a, *supra,* es evitar que el patrono despida a un obrero lesionado porque esté acogido a los beneficios del Fondo. Ello, para que éstos puedan acudir al Fondo sin temor de ser despedidos. *Íd.*

Examinado el propósito legislativo detrás de la aprobación de la Ley Núm. 45, supra, y, en específico, del artículo 5a, *supra*, veamos lo que dispone ese artículo en cuanto al derecho de reinstalación del obrero luego de su incapacidad:

> **[e]n los casos de inhabilitación para el trabajo de acuerdo con las disposiciones de este Capítulo, el patrono vendrá obligado a reservar el empleo que desempeñaba el obrero o empleado al momento de ocurrir el accidente y a reinstalarlo en el mismo, sujeto a las siguientes condiciones:**

(1) **Que el obrero o empleado requiera al patrono para que lo reponga en su empleo** dentro del término de quince días, contados a partir de la fecha en que el obrero o empleado fuere dado de alta, y siempre y cuando que dicho requerimiento no se haga después de transcurridos doce meses desde la fecha del accidente;

(2) que el obrero o empleado esté mental y físicamente capacitado para ocupar dicho empleo en el momento en que solicite del patrono su reposición, y

(3) que dicho empleo subsista en el momento en que el obrero o empleado solicite su reposición. (Se entenderá que el empleo subsiste cuando el mismo está vacante o lo ocupe otro obrero o empleado. Se presumirá que el empleo estaba vacante cuando el mismo fuere cubierto por otro obrero o empleado dentro de los treinta días siguientes a la fecha en que se hizo el requerimiento de reposición.)

**Si el patrono no cumpliere con las disposiciones de esta sección vendrá obligado a pagar al obrero o empleado o a sus beneficiarios los salarios que dicho obrero o empleado hubiere devengado de haber sido reinstalado, además le responderá de todos los daños y perjuicios que le haya ocasionado.** El obrero o empleado, o sus beneficiarios, podrán instar y tramitar la correspondiente reclamación de reinstalación y/o de daños en corte por acción ordinaria o mediante el procedimiento para reclamación de salarios, establecido en las secs. 3118 a 3132 del Título 32. (Énfasis suplido.)

A tenor del artículo 5a, *supra*, y de nuestro ordenamiento jurídico vigente, el patrono está obligado a reservarle el empleo a su obrero mientras éste recibe los beneficios del Fondo, sujeto a los términos allí establecidos. *García Díaz v. Darex Puerto Rico, Inc. et al.,* res. el 20 de mayo de 1999, 148 D.P.R. ___, 99 T.S.P.R. 79, 99 J.T.S. 84, pág. 1053. El patrono no puede despedir al obrero en tales circunstancias, salvo que medie justa causa. *Íd.*

El artículo 5a, *supra,* provee dos tipos de protección al obrero accidentado o incapacitado: (1) el patrono viene obligado a reservarle el empleo que ocupaba para la fecha del accidente o enfermedad; y (2) el obrero puede solicitarle al patrono su reinstalación en el empleo si cumple con los siguientes requisitos:

1. que el accidente o enfermedad ocupacional inhabilite al empleado para trabajar;

2. que el empleado se acoja a los beneficios de la Ley Núm. 45, *supra;*

3. que dentro de los quince (15) días de haber sido dado de alta definitivamente y autorizado a trabajar por el Fondo, el empleado solicite al patrono reposición en su empleo;

4. que dicho requerimiento de reposición se haga dentro de los doce (12) meses de haber ocurrido el accidente o enfermedad;

5. que al solicitar su reposición, el empleado esté física y mentalmente capacitado para desempeñarse en las funciones del empleo que ocupaba;

6. que dicho empleo subsista al momento en que el trabajador solicita su reinstalación. *Rivera González v. Blanco Vélez Stores, Inc.,* supra.

La obligación del patrono de reinstalar al obrero, una vez es dado de alta del Fondo, está supeditada a las tres condiciones que señala el artículo 5a, entre éstas, que el obrero le solicite al patrono que lo reponga en su empleo. Hoy nos toca resolver si esta condición debe también exigírsele a aquél obrero que fue despedido durante el período de reserva. En otras palabras, si el obrero tiene que pedir la reinstalación en su empleo, aun cuando el patrono ya lo había despedido para la fecha en que el Fondo le dio de alta. Veamos.

III

El artículo 5a, *supra,* obliga al patrono a reservarle el empleo al obrero accidentado o incapacitado y a reinstalarlo, es decir, a reponerlo en el empleo que ocupaba para la fecha del accidente o de su incapacidad, sujeto a unas condiciones. El período de reserva es para proteger al empleado de confrontarse con la incertidumbre de perder su empleo por haberse accidentado. *Santiago v. Kodak Caribbean, Ltd.,* 129 D.P.R. 763 (1992).

Por otra parte, el inciso (1) del artículo 5a, *supra,* le exige al empleado que, dentro del término de quince (15) días desde que el Fondo lo dio de alta, le solicite a su patrono que lo reinstale en su empleo. Ello, para evitar que el obrero, a sabiendas de que el patrono le tiene que reservar el empleo durante doce (12) meses –a partir de la fecha del accidente–, se aproveche de este beneficio y no le notifique prontamente de su disponibilidad para retornar a su empleo. Además, al existir una fecha cierta como límite de responsabilidad del patrono, se evita que el patrono levante como defensa que desconocía que el Fondo había dado de alta al obrero, y que éste estaba disponible para trabajar.[4]

La peticionaria argumenta que el recurrido no tiene derecho a todos los remedios que dispone el artículo 5a, *supra*, porque éste no cumplió con el requisito de solicitar reinstalación. La peticionaria fundamenta su argumento en *García Díaz v. Darex Puerto Rico, Inc. et al.,* supra, donde resolvimos que el obrero que no satisfaga todos los requisitos del artículo 5a, *supra*, no tendrá derecho a la reinstalación

ni al reembolso de los salarios dejados de percibir; el obrero sólo tendrá derecho a reclamar los daños y perjuicios producto del incumplimiento del patrono con el período de reserva.

La peticionaria aduce que, a tenor de lo resuelto en *García Díaz v. Darex Puerto Rico, Inc. et al.*, supra, dado que el recurrido no le solicitó su reinstalación oportunamente, sólo tendrá derecho a reclamar los daños y perjuicios que sufrió como consecuencia de que la peticionaria violara el período de reserva. Veamos.

En *García Díaz v. Darex Puerto Rico, Inc. et al.*, supra, un obrero sufrió un accidente ocupacional y se reportó al Fondo para recibir tratamiento médico. A los cinco días de comenzar el tratamiento, el patrono lo despidió injustificadamente, en violación al período de reserva. Poco después, y aún bajo el Fondo, el obrero instó demanda contra el patrono alegando que el despido fue injustificado y discriminatorio.

A instancias del obrero, el TPI emitió sentencia sumaria parcial. Dictaminó que el despido fue injustificado, que el obrero tenía derecho a los beneficios que hubiese recibido de no haber sido despedido y dispuso que las demás causas de acción serían adjudicadas posteriormente. El TCA modificó el dictamen del TPI a los fines de limitar el remedio concedido a los beneficios a los cuales el obrero hubiese tenido derecho de no haber sido despedido.

En ese caso, en vista de que el Fondo no dio de alta al obrero hasta vencido el período de reserva, resolvimos que un obrero que no satisface los requisitos establecidos en el

---

[4] Delgado Zayas, *Apuntes para el Estudio de la Legislación Protectora del Trabajo en el Derecho Laboral Puertorriqueño*,

artículo 5a, *supra*, de ordinario, y aunque se le haya despedido dentro del período de reserva, no tendrá derecho a ser reinstalado ni a los salarios que hubiese devengado de haber continuado trabajando. Allí decretamos que, en casos como ese, el obrero sólo podrá reclamar los daños y perjuicios que el incumplimiento del patrono con el período de reserva le haya ocasionado.

En *García Díaz v. Darex Puerto Rico, Inc. et al.,* supra, el requisito del artículo 5a, *supra,* incumplido fue que el obrero no se recuperó a tiempo –es decir, dentro del período de reserva– para solicitarle su reinstalación al patrono. En ese caso, el obrero perdió su derecho a ser reinstalado porque el Fondo no le dio de alta dentro del período de reserva, no porque el patrono lo despidió en violación al período de reserva.

Según la peticionaria, el requisito incumplido en el presente caso fue que el recurrido no le solicitó oportunamente su reinstalación, una vez el Fondo lo dio de alta. No tiene razón.

Ni la Ley Núm. 45, *supra,* ni la jurisprudencia actual atienden la controversia que hoy nos ocupa. Existe en dicha ley una laguna en cuanto a si un empleado que estuvo bajo el Fondo tiene que solicitarle al patrono su reinstalación, una vez es dado de alta, a pesar de que éste lo despidió durante el período de reserva. Ilustrativa nos parece la interpretación que el Lic. Ruy N. Delgado Zayas le da a este asunto. El Lic. Delgado Zayas nos comenta que, si el patrono despide al obrero antes de que el Fondo le dé de alta, el obrero no tendrá que pedirle

San Juan, 1999, pág. 191.

al patrono que lo reinstale en su empleo porque ello constituiría un acto inútil. Su análisis sobre este particular es el siguiente:

> [e]s obvio que si el obrero ha sido despedido expresamente, éste no va a ir como cuestión práctica y lógica a solicitar su antiguo empleo, ya que el patrono le informó definitivamente su posición al respecto. Bien pudiera preguntarse, ¿qué empleo va a solicitar?
>
> Por lo tanto, el legislador no le puede haber exigido al trabajador un acto inútil o sin propósito alguno.
>
> La causa de acción del obrero...no está supeditada a que el obrero en un vano empeño, al ser dado de alta, vaya a solicitar que se le reponga en su empleo, de aquel que en forma expresa y sin justa causa fue despedido previamente.[5]

Analizados los principios enunciados, veamos su aplicación al presente caso.

IV

Recapitulando los hechos ante nos, el recurrido se reportó al Fondo el 31 de enero de 1994. La peticionaria lo despidió el 3 de febrero de 1994. El 9 de febrero de 1994, el Fondo le dio de alta al recurrido sin incapacidad. Evidentemente, la peticionaria violó el período de reserva dispuesto en el artículo 5a, *supra*. No obstante, la peticionaria aduce que el recurrido no tiene derecho a ser reinstalado en su empleo porque no se lo solicitó dentro del término de quince (15) días que establece el artículo 5a, *supra.* El recurrido justifica el no haber solicitado oportunamente la reinstalación en que ya la peticionaria lo había despedido para la fecha en que el Fondo lo dio de alta.

La solicitud de reinstalación constituye una obligación del obrero accidentado o incapacitado cuando están presentes las circunstancias que justifican la existencia de dicha obligación. El interés tutelado detrás de la obligación del obrero de solicitar la reinstalación es proteger la tenencia de empleo del obrero accidentado o incapacitado y, al mismo tiempo, establecer una fecha cierta como límite de la responsabilidad del patrono de reservar el empleo, de modo que, vencido ese término, el patrono queda libre de llenar el puesto con otro empleado.

En el presente caso, no se justifica que le exijamos al recurrido que le solicite a la peticionaria su reinstalación, ya que el interés tutelado detrás de esta obligación es inexistente bajo estas circunstancias. Nótese que, aquí, no hay tenencia de empleo que proteger porque ya la peticionaria lo había despedido de su empleo. Además, qué necesidad hay de fijar una fecha a partir de la cual la peticionaria no tiene que guardarle el empleo al recurrido si, en efecto, ya lo despidió.

Coincidimos con la interpretación del Lic. Delgado Zayas de que —en situaciones como ésta— en las cuales el patrono despidió al obrero antes de que el Fondo lo diera de alta, no es necesario que el obrero le solicite al patrono que lo reinstale en su empleo, siempre y cuando ambas cosas ocurran dentro del período de reserva. La peticionaria aduce que un empleado que es despedido en violación al período de reserva es quien más debe solicitar la reinstalación, de modo que le brinde al patrono la oportunidad de rectificar su error. Ese planteamiento no nos convence.

---

[5] Delgado Zayas, *op. cit.*

Entendemos que, una vez el patrono decide despedir a un obrero, a sabiendas de que éste está recibiendo tratamiento bajo el Fondo, y durante el período de doce (12) meses que la ley lo obliga a reservarle el empleo, difícilmente, ante un pedido de reinstalación de dicho empleado, el patrono va a acceder. Después de todo, los jueces no podemos ser tan ingenuos como para creer lo que nadie más creería. *Pueblo v. Rosado Figueroa*, 138 D.P.R. 914 (1995) (Op. Dis. Juez Rebollo López); *Pueblo v. Luciano Arroyo*, 83 D.P.R. 573, 582 (1961).

Hoy decretamos que, el requisito de solicitar la reinstalación establecido en el artículo 5a, *supra,* y lo resuelto en *García Díaz v. Darex Puerto Rico, Inc. et al.,* supra, no aplica a casos como éste en los cuales, en violación al período de reserva, el patrono despide injustificadamente al obrero mientras éste está reportado al Fondo, quien eventualmente lo da de alta también dentro del período de reserva. En otras palabras, ante unas circunstancias como ésta, no se justifica que obliguemos al recurrido a solicitarle a la peticionaria su reinstalación por cuanto, como dijimos anteriormente, no existe el interés tutelado que se quiso proteger al establecer esa obligación.

Lo resuelto anteriormente es compatible con la norma de *Santos Berríos et al. v. Lederle Piperacillin et al.*, res. el 17 de abril de 2001, 153 D.P.R. ___, 2001 T.S.P.R. 53, 2001 J.T.S. 55, pág. 1122. Allí, citando a *Santiago v. Kodak Caribbean, Ltd.*, supra, y la Consulta Núm. 13310 del Secretario del Trabajo, concluimos que "la reserva de empleo supone la continuación y existencia de la relación obrero-patronal, al

menos durante doce (12) meses consecutivos (360 días) a partir de la fecha del accidente.

Análogamente, hoy resolvemos que el deber del obrero lesionado de solicitarle al patrono su reinstalación parte de la premisa de que aún existe una relación obrero-patronal. En el caso de autos, en ausencia de una relación obrero-patrono, provocada por el despido injustificado del recurrido durante al período de reserva, el recurrido no venía obligado a solicitarle a la peticionaria su reinstalación.

Como bien señala el Lic. Delgado Zayas,[6] es ilógico que, para que el recurrido tenga derecho a los remedios provistos en el artículo 5a, *supra*, éste venga obligado a solicitarle a la peticionaria su reinstalación, cuando ésta ya le había manifestado expresamente su decisión de despedirlo. Ello constituiría un acto sin propósito alguno.[7]

Resolver lo contrario trastocaría diametralmente el fin reparador del artículo 5a, *supra*, y desvirtuaría su propósito de proteger el interés del obrero de no perder su empleo por haber sufrido un accidente. En virtud de la naturaleza remedial de la Ley Núm. 45, *supra,* ésta debe interpretarse liberalmente a favor del obrero. *Santos Berríos et al. v. Lederle*

---

[6] Delgado Zayas, *op cit.*

[7] Análogamente, en *Meléndez Rivera v. Asociación Hospital del Maestro,* res. el 10 de mayo de 2002, 156 D.P.R. ___, 2002 T.S.P.R. 60, 2002 J.T.S. 66, nota al calce 13, resolvimos que, un obrero que se ausenta de su empleo por una incapacidad temporal no ocupacional, al amparo de la Ley de Beneficios por Incapacidad Temporal (SINOT), no viene obligado a solicitar su reinstalación dentro del término que esa ley establece, si el patrono lo despidió dentro del período de reserva que le garantiza SINOT. Ello, bajo el fundamento de que exigirle eso al obrero sería fútil e innecesario.

*Piperacillin, Inc. et al., supra; Santiago v. Kodak Caribbean, Ltd.,* supra, pág. 769.

Por los fundamentos antes expuestos, resolvemos que, dadas las circunstancias de este caso, el recurrido no tenía que solicitarle a la peticionaria su reinstalación, como condición para poder reclamarle todos los remedios que establece el artículo 5a, *supra*. Dicho lo anterior, concluimos que el primer señalamiento de error no se cometió.

V

En su segundo señalamiento de error, la peticionaria plantea que, del recurrido tener derecho a reclamar todos los remedios del artículo 5a, *supra*, hay que deducir de la partida concedida por concepto de los salarios dejados de percibir, los salarios que el recurrido devengó en sus empleos posteriores al despido, a tenor de lo resuelto en *Hernández Badillo v. Municipio de Aguadilla*, res. el 5 de junio de 2001, 154 D.P.R. ___, 2001 T.S.P.R. 78, 2001 J.T.S. 81. Tiene razón.

Conforme al artículo 5a, *supra*, el patrono que viole el derecho de reserva de un empleado tendrá que pagarle a éste, o a sus beneficiarios, los salarios dejados de percibir, además de los daños y perjuicios que le ocasionó con el despido.

En *Odriozola v. S. Cosmetic Dist. Corp.*, 116 D.P.R. 485 (1985) este Tribunal resolvió que la cuantía a la cual tiene derecho el obrero despedido injustificadamente, por concepto de salarios y beneficios no devengados, se computa desde la fecha del despido hasta la fecha en la cual el TPI dictó sentencia. No obstante, en aquella ocasión, no tuvimos la oportunidad de expresarnos con respecto a si procedía o no descontar de esa cuantía los ingresos que el obrero devengó

durante ese período, producto de sus empleos posteriores, ya que el demandante en aquel caso no impugnó ante nosotros el dictamen del TPI descontando tales partidas.

En *Berríos v. Eastern Sugar Associates*, 85 D.P.R. 119, 130 (1962), un empleado se querelló en contra de su patrono alegando que este último estaba incumpliendo con las leyes sobre el pago del salario realmente devengado. Poco después, el patrono lo cesanteó supuestamente para que pudiera acogerse a los beneficios del seguro social. Aproximadamente dos años y medio después de que cesó en su empleo, el querellante inició un pleito en contra de Eastern Sugar Associates por alegado despido ilegal. Solicitó su reposición en el empleo y el pago en daños por concepto de los salarios no pagados desde su cesantía. Invocó como fuente de reclamación la sección 19 de la Ley Núm. 8 de 5 de abril de 1941, conocida como la Ley de Salario Mínimo de 1941, 29 L.P.R.A sec. 230.

En aquel caso, el TPI declaró con lugar la demanda, pero este Tribunal revocó. Resolvimos que la sección 19, *supra*, no le impone al patrono el pago de los salarios dejados de percibir, aun cuando éstos pueden considerarse a la hora de fijar los daños a favor del obrero. Allí añadimos:

> [a]ún [sic] en aquellas situaciones en que la ley autoriza expresamente la reposición con abono de la paga que el obrero hubiese devengado–artículo 9(b) de la Ley Núm. 130 de 8 de mayo de 1945, 29 L.P.R.A. sec. 70(b)– hemos resuelto que ésta es una medida reparadora, y no punitiva, y que **el patrono puede deducir cualquier suma que el obrero perjudicado hubiese percibido por su trabajo con otros patronos**. (Citas omitidas.) (Énfasis nuestro.) *Berríos v. Eastern Sugar Associates*, supra, pág. 130.

Bajos esos fundamentos, en aquella ocasión decretamos que el querellante recibió ingresos mensuales sustancialmente similares a los que hubiese recibido como salario, de haber continuado trabajando. Ante tales circunstancias, desestimamos la querella.

Recientemente, en *Hernández Badillo v. Municipio de Aguadilla*, supra, reiteramos la norma de *Berríos v. Eastern Sugar Associates*, supra. Sobre este particular, expresamos:

> [e]n el ámbito laboral –en la empresa privada–, hemos resuelto que los daños concedidos a un obrero, en virtud de la Ley de Salario Mínimo de 1941, serán unos **puramente nominales** en aquellos casos en los cuales dicho obrero ha obtenido otro empleo con un salario sustancialmente igual o en casos en que éste tiene otros ingresos, incluyendo los beneficios de seguro social. *Berríos v. Eastern Sugar Associates*, 85 D.P.R. 119, 130 (1962). Incluso, hemos establecido que en aquellas situaciones en que un estatuto autoriza expresamente la reposición con abono de la paga que el obrero hubiese devengado, el patrono podrá deducir **cualquier suma** que el obrero perjudicado hubiese percibido por su trabajo con otros patronos. *Íd.* (Énfasis en el original.) *Hernández Badillo v. Municipio de Aguadilla*, supra, pág. 1295.

Nótese que, en virtud del carácter reparador de la Ley Núm. 45, *supra*, el recurrido tendrá derecho a que la peticionaria le reembolse la cuantía correspondiente como si él hubiese continuado trabajando durante el período entre el despido y el dictamen del TPI. Ello implica que procede descontar los salarios que el recurrido devengó de los empleos posteriores al despido. Lo importante es que el recurrido no se perjudique económicamente como consecuencia del despido injustificado, es decir, que el recurrido no devengue un salario menor al que hubiese recibido de haber continuado trabajando para la

peticionaria. De lo contrario, le estaríamos imputando a la Ley Núm. 45, *supra*, un carácter punitivo que no tiene.

Conforme a la jurisprudencia antes citada y, tomando en consideración el carácter reparador de la Ley Núm. 45, *supra*, resolvemos que, en el presente caso, procede que, de la cuantía a favor del recurrido por concepto de salarios dejados de percibir se deduzcan los salarios que éste devengó desde el 1996 al 2000, año en que el TPI dictó sentencia.[8] Ello se traduce en números a:

| $151,820.00 (en salarios no devengados) | − | $61,360.00 (en salarios de otros empleos)[9] | = | $90,460.00 (Balance a compensar) |
|---|---|---|---|---|

Por los fundamentos antes esbozados, se modifica la sentencia de 15 de mayo de 2001 del Tribunal de Circuito de Apelaciones a los únicos fines de deducir los salarios que el recurrido devengó de otros empleos del monto que la peticionaria tiene que reembolsarle a éste por concepto de los salarios dejados de percibir. Así modificada, se confirma.

Se dictará sentencia de conformidad.

BALTASAR CORRADA DEL RÍO
Juez Asociado

---

[8] Acogemos el planteamiento de la peticionaria de que no se calculen los ingresos misceláneos del recurrido devengados durante el 1994 y 1995, para adoptar el punto de vista más beneficioso para el recurrido.

[9] Los $61,360.00 devengados de otros empleos se desglosan así: en 1996 ($4.25/hr. x 2,080 hrs. = $8,840.00); en 1997 ($4.25/hr. x 2,080 hrs. = $8,840.00); en 1998 ($8.40/hr. x 2,080 hrs. = $17,472.00); en 1999 ($8.40/hr. x 2,080 hrs. = $17,472.00); en 2000 ($8.40/hr. x 1,040 hrs. = $8,736.00).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Víctor Rivera Rivera

   **Recurrido**

         v.                              CC-2001-685        Certiorari

**Insular Wire Products, Corp.**

   Peticionaria


                              SENTENCIA


      San Juan, Puerto Rico, a 16 de septiembre de 2002.

         Por los fundamentos expuestos en la Opinión que
antecede, la cual se hace formar parte integrante de la
presente, se modifica la sentencia de 15 de mayo de 2001
del Tribunal de Circuito de Apelaciones a los únicos
fines de deducir los salarios que el recurrido devengó
de otros empleos del monto que la peticionaria tiene que
reembolsarle a éste por concepto de los salarios dejados
de percibir. Así modificada, se confirma.

         Lo pronunció, manda el Tribunal y certifica la
Secretaria del Tribunal Supremo. El Juez Asociado señor
Fuster Berlingeri está conforme con los acápites I al IV
y disiente sin opinión escrita con el acápite V por razón
de la Opinión Disidente sobre el mismo asunto que emitió
en Hernández v. Mun. de Aguadilla, 2001 JTS 81. El Juez
Asociado señor Rivera Pérez disiente sin opinión
escrita.


                         Patricia Otón Olivieri
                        Secretaria del Tribunal Supremo