ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| DIANA I. DÍAZ OLMO<br><br>Parte Recurrida<br><br><br>v.<br><br><br><br>CORPORACIÓN DEL FONDO DEL SEGURO DEL ESTADO<br><br>Parte Recurrente<br><br><br>COMISIÓN INDUSTRIAL DE PUERTO RICO<br>Parte Recurrida | KLRA202400498 | *Revisión Judicial,* procedente de la Comisión Industrial de Puerto Rico<br><br>Caso CI.:<br>06-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-05<br><br>Caso C.F.S.E.:<br>04-64-21832-6<br><br>Sobre:<br>Incapacidad Independiente |

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Salgado Schwarz y el Juez Monge Gómez.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 11 de octubre de 2024.

Compareció ante este Tribunal la parte recurrente, el Administrador de la Corporación del Fondo del Seguro del Estado (en adelante, el "Administrador" o el "Recurrente"), mediante recurso de revisión judicial presentado el 9 de septiembre de 2024. Nos solicitó la revocación de la *Resolución* emitida por la Comisión Industrial de Puerto Rico (en adelante, la "Comisión") el 1 julio de 2024, notificada y archivada en autos el 10 del mismo mes y año. Dicho dictamen fue objeto de una "**Moción en Reconsideración**" interpuesta por el Recurrente el 24 de julio de 2024, sin embargo, la Comisión no actuó sobre la misma dentro del plazo estatutario de quince (15) días.

Por los fundamentos que expondremos a continuación, se *revoca* la *Resolución* emitida por la Comisión.

Número Identificador
SEN2024_____

**I.**

El caso de epígrafe tuvo su génesis el 14 de mayo de 2004, con la radicación de un "**Informe Patronal**" ante la Corporación del Fondo del Seguro del Estado (en adelante, "CFSE") por parte de la Sra. Diana Díaz Olmo (en adelante, la "señora Díaz Olmo" o la "Recurrida") sobre un accidente relacionado a su empleo en el Centro Médico de San Juan. A través del mismo, alegó haber sufrido dolores de espalda y cuello mientras desempeñaba su labor como técnica de manejo de información de salud.

El 23 de septiembre de 2005, y notificado el 21 de noviembre del mismo año, el Administrador emitió una *Decisión* sobre el caso núm. 04-64-21832-6 mediante la cual expresó que el accidente en cuestión estaba protegido por la Ley Núm. 45 del 28 de abril de 1935, *infra*. De igual manera, concluyó que la señora Díaz Olmo padecía de un 5% de incapacidad en su mano derecha y otro 5% de incapacidad por una condición orgánica lumbosacral. Así pues, determinó que la Recurrida debía ser compensada con la suma de $2,112.50. Posteriormente, el 23 de enero de 2007, la representación legal de la señora Díaz Olmo presentó un "**Escrito de Apelación**" ante la Comisión, mediante el cual alegó no haber sido notificado de la *Decisión* del 21 de noviembre de 2005 y solicitó que se señalara el caso para la vista correspondiente.

Así las cosas, el 4 de septiembre de 2007 y notificada el 30 de noviembre del mismo año, el Administrador emitió una *Decisión* en el caso núm. 06-64-20371-5, relacionado con un accidente diferente, a través de la cual determinó que la Recurrida sufrió un esguince. Del mismo modo, concluyó que padecía de un 5% de incapacidad en la región lumbosacral, por lo que debía ser compensada por la cantidad de $1,462.50. Más adelante, el 29 de enero de 2008, la Comisión emitió una *Resolución* en el caso núm. 04-64-21832-6, mediante la cual determinó que el recurso apelativo fue presentado dentro del término dispuesto por ley y ordenó a la Secretaría de dicha entidad a que señalara una vista médica para la próxima fecha hábil en calendario sobre las condiciones de esguince cervical y lumbar, irritabilidad L5 y el síndrome del túnel carpiano en la mano derecha.

La vista médica se llevó a cabo el 6 de marzo de 2008. Cuatro (4) días después, la Comisión emitió una *Resolución* en la cual decidió aumentar la incapacidad de la mano derecha a un 15% y a un 10% la incapacidad de la región cervical. También refirió a la señora Díaz Olmo a la fisiatra de la Comisión.

El 10 de septiembre de 2008 y notificada el 25 del mismo mes y año, la Comisión emitió otra *Resolución* en el caso núm. 04-64-21832-6 mediante la cual devolvió el caso a la jurisdicción del Administrador de la CFSE para que fuera evaluado juntamente con el caso núm. 06-64-20371-4, relacionado con los presuntos padecimientos de la señora Díaz Olmo en el área lumbar. El 21 de mayo de 2009, la CFSE confirmó la decisión tomada el 1 de febrero de 2005. Esta determinación fue apelada el 18 de junio de 2009. Luego de varios trámites procesales, incluyendo la evaluación de un neurólogo y de que la señora Díaz Olmo fuera diagnosticada con la condición de radiculopatía lumbar izquierda clínica, el 22 de noviembre de 2010, la Comisión mediante *Resolución* aumentó la incapacidad de las funciones fisiológicas generales por condición lumbar a un 10% y **ordenó que se descontara el montante pagado anteriormente**. **Cabe señalar que del legajo apelativo ante nos no surge que dicha determinación fuera apelada por la señora Díaz Olmo**. Posteriormente, el 8 de febrero de 2011, notificada el 10 de marzo de 2011, el Administrador de la CFSE concluyó que en el caso núm. 04-64-21832-6 no procedía efectuar ningún pago, ya que anteriormente a la Recurrida se le había otorgado un 10% por sus afecciones lumbares. Así pues, determinó que el asunto era académico, por virtud de la *Resolución* emitida por la Corporación el 22 de noviembre de 2010. Esta decisión fue apelada el 28 de marzo de 2011.

Años más tarde, después de múltiples gestiones procesales, el 10 de julio de 2024 la Oficial Examinadora de la Comisión, Sra. Ana M. Ortiz Feliciano, presentó cierto Informe. Concluyó que la Recurrida tenía un diez por ciento (10%) por la condición de esguince lumbosacral, por lo que resultaba errónea la decisión de descontarle el cinco por ciento (5%) otorgado independientemente por la condición de radiculopatía reconocido.

El 1 de julio de 2024, la Comisión emitió una *Resolución* a través de la cual acogió las recomendaciones del referido Informe. Así pues, respecto a la incapacidad de la señora Díaz Olmo, resolvió lo siguiente:

Otorgar a la parte apelante una incapacidad parcial permanente equivalente a la pérdida de un cinco por ciento (5%) de las funciones fisiológicas generales por la condición de radiculopatía L5 izquierda, independiente a la incapacidad previamente reconocida por a condición de esguince lumbrosacral.[1]

Insatisfecho con esta decisión, el 24 de julio de 2024 el Administrador de la CFSE presentó, una "**Moción en Reconsideración**", la cual no fue acogida por la Comisión. Aún inconforme con lo anteriormente resuelto, el Recurrente acudió ante este Tribunal mediante el recurso de epígrafe, en el que señaló los siguientes errores:

A. Erró la Honorable Comisión Industrial al otorgar una incapacidad por la condición de radiculopatía izquierda independiente a lo otorgado por la condición de lumbar, sin tener jurisdicción para adjudicarla. La parte obrera no apeló la resolución de vista médica notificada el 21 de diciembre de 2010 por lo que privó de jurisdicción a la Comisión para la determinación aquí recurrida. La determinación de la Comisión Industrial fue arbitraria, irrazonable y constituye un abusó [sic] de su discreción.

B. Erró la Comisión Industrial al determinar que la apelación presentada contra decisión del Administrador de la CFSE sobre IPP Académica, notificada el 10 de marzo de 2011, le confirió jurisdicción para alterar la determinación de una resolución de vista médica final y firme.

C. Erró la Honorable Comisión Industrial al no Confirmar la Decisión del Administrador de la Corporación del Fondo del Seguro del Estado notificada el 10 d marzo de 2011. La decisión del Administrador es correcta en derecho, ya que, para determinar el pago correspondiente a la incapacidad adjudicada por una resolución final y firme de la Comisión Industrial, procedió conforme al mandato de la Ley 45-1935, y descontó la incapacidad preexistente de la lesionada por la misma condición procedente de accidentes del trabajo. Artículo 3, sección d-3 11 L.P.R.A. § 3, d-3 [.]

El 1 de octubre de 2024, la señora Díaz Olmo compareció ante este Tribunal.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

---

[1] *Véase*, Apéndice del Recurso de Revisión Judicial, pág. 27.

**II.**

**A.**

El término jurisdicción ha sido definido como el poder y autoridad que poseen los tribunales y las agencias administrativas para considerar y decidir sobre las controversias ante su consideración. Cobra Acquisitions v. Municipio de Yabucoa et al., 210 DPR 384, 394 (2022). Para adjudicar un caso, el tribunal o la agencia debe tener jurisdicción tanto sobre la materia en cuestión como sobre las partes en disputa. Adm. Terrenos v. Ponce Bayland, 207 DPR 586, 600 (2021). Por ello, nuestro Tribunal Supremo ha sostenido reiteradamente que los tribunales y las agencias administrativas debemos ser celosos guardianes de nuestra jurisdicción y que los asuntos relacionados con esta son privilegiados y deben atenderse de manera preferente. Torres Alvarado v. Madera Atiles, 202 DPR 495, 500 (2019).

La ausencia de jurisdicción conlleva las siguientes consecuencias inexorablemente fatales: (1) la falta de jurisdicción no es susceptible de ser subsanada, (2) las partes no pueden voluntariamente otorgarle jurisdicción sobre la materia a un tribunal o a una agencia, ni estos pueden abrogársela, (3) los dictámenes de un foro sin jurisdicción sobre la materia son nulos, (4) los tribunales y las agencias tienen el ineludible deber de auscultar su propia jurisdicción, (5) los tribunales apelativos, además, deberán examinar la jurisdicción del foro de donde procede el recurso y (6) el planteamiento de falta de jurisdicción sobre la materia puede presentarse en cualquier etapa del procedimiento. Allied Mgmt. Group. v. Oriental Bank, 204 DPR 374, 386 (2020). Por tanto, si se carece de jurisdicción, solo resta declararlo así y desestimar la reclamación sin entrar en los méritos de la controversia. Beltrán Cintrón et al. v. ELA et al., 204 DPR 89, 102 (2020).

**B.**

La Ley Núm. 45 de 18 de abril de 1935, según enmendada, mejor conocida como "Ley del Sistema de Compensaciones por Accidentes del Trabajo" (en adelante, "Ley Núm. 45"), fue promulgada con el fin ulterior de fomentar el bienestar de los habitantes de Puerto Rico en relación con los accidentes que provocan la muerte, lesiones, fallecimientos o enfermedades

derivadas de la ocupación de los trabajadores durante el desempeño de su trabajo. Como política pública de este estatuto, se reconoce que el riesgo de sufrir accidentes laborales es de naturaleza fundamental y requiere intervención gubernamental. 11 LPRA sec. 1a. Así, se favorece la implementación de un sistema de compensaciones basado en la norma de responsabilidad legal absoluta. Íd. De igual manera, entre los principios que rigen esta ley, se encuentran los siguientes: (1) ningún sistema puede eliminar completamente el sufrimiento ni compensar por completo las pérdidas económicas y sociales que ocasionan las lesiones; (2) se le debe proveer al trabajador lesionado el mejor y más rápido tratamiento médico disponible y (3) la protección o compensación económica del sistema debe ofrecer mayores beneficios a los trabajadores. Íd.

Para cumplir con tales fines, se creó la CFSE, entidad gubernamental responsable de realizar las acciones pertinentes para ejercer las facultades otorgadas por la ley, incluyendo las decisiones sobre compensaciones a los trabajadores. 11 LPRA sec. 1b. Específicamente, al Administrador de dicha entidad se le otorgaron las responsabilidades de gestionar y supervisar programas de prevención de accidentes de trabajos, atender las determinaciones y recomendaciones del Consejo Medico Industrial, autorizar, realizar y fiscalizar los desembolsos, entre otras funciones. 11 LPRA sec. 1b-4.

En relación con la controversia que nos ocupa, el Artículo 9 de la referida ley regula las apelaciones contra las decisiones del Administrador de la CFSE. En detalle, este dispone lo siguiente:

> Si el obrero o empleado, o sus beneficiarios, no estuviesen conformes con la decisión dictada por el Administrador de la Corporación del Fondo del Seguro del Estado en relación con su caso, podrán apelar ante la Comisión Industrial dentro de un término de treinta (30) días después de haber sido notificados con copia de la decisión del Administrador, y el caso se referirá a un oficial examinador.
>
> […]
>
> **Una vez presentada una apelación por un obrero lesionado, en que haya una controversia de carácter médico, el apelante será examinado en una vista médica para determinar si el apelante necesita tratamiento médico adicional, ser evaluado por un especialista o se requiere revisar la determinación sobre incapacidad**.

> Dicha vista será efectuada por médicos de la Corporación del Fondo del Seguro del Estado y de la Comisión Industrial conjuntamente, y por el médico que el obrero tuviese a bien traer, cuyos honorarios y gastos de viajes serán compensados por la Comisión Industrial en la forma que se establezca por reglamento, estará a cargo y bajo el control del médico representante de la Comisión. El apelante podrá estar asistido por abogado.
>
> Los médicos a cargo de la vista médica prepararán un informe a la Comisión sobre la evaluación médica y las medidas tomadas relacionadas con la condición, tratamiento médico del apelante y determinaciones sobre incapacidad, si alguna. **La Comisión emitirá la resolución de rigor y le notificará al apelante**. **De estar el apelante inconforme con la resolución de la Comisión, éste podrá solicitar la celebración de una vista pública dentro del término de treinta (30) días**. 11 LPRA sec. 11 (énfasis suplido).

En otras palabras, si el empleado lesionado no está de acuerdo con la decisión del Administrador del CFSE sobre su caso, puede recurrir a la Comisión dentro de 30 días después de recibir la notificación. Luego de que presenta la apelación, éste será sometido a una evaluación médica para determinar si es necesario reconsiderar la decisión sobre su incapacidad. Si aún no está satisfecho luego de la celebración de una vista médica, puede solicitar la celebración de una vista pública ante la Comisión dentro de un plazo de 30 días.  De esta manera, se garantiza que la compensación sea justa y acorde con las circunstancias particulares del empleado.

Por su parte, respecto a las lesiones anteriores, la Ley Núm. 45, *supra*, establece que, en los casos en los que un trabajador sufra un agravamiento de una incapacidad preexistente debido a un accidente anterior por el que ya recibió compensación, **se le descontará de la nueva compensación el montante de la compensación que recibió por su incapacidad previa**. 11 LPRA sec. 3 (d-3).

**III.**

En el presente caso, el Administrador de la CFSE nos solicitó la revocación de la *Resolución* emitida por la Comisión en la que le otorgó a la Recurrida una incapacidad parcial permanente de un 5% por la condición de radiculopatía L5 izquierda, independiente a la incapacidad reconocida por la condición de esguince y concluyó que el descuento realizado, luego de la *Resolución* emitida por la Comisión el 22 de noviembre de 2010 fue indebido.

Los tres señalamientos de error esgrimidos están íntimamente relacionados, por lo que se abordarán de manera conjunta en la discusión. En síntesis, el Recurrente sostiene que la Comisión erró al: (1) otorgarle una incapacidad por la condición de radiculopatía izquierda independiente a lo otorgado por la condición de lumbar, sin tener jurisdicción para adjudicarla; (2) determinar que la apelación presentada el 10 de marzo de 2011 le confirió jurisdicción para alterar una determinación final y firme, y (3) no conformar la decisión de la CFSE. Le asiste la razón. Veamos.

Del expediente ante nuestra consideración se desprende que el 14 de mayo de 2004, la señora Díaz Olmo sufrió cierto accidente en su lugar de empleo que culminó en la radicación de un "**Informe Patronal**" ante la CFSE. A causa de lo anterior, la CFSE determinó que la Recurrida padecía de un 5% de incapacidad en su mano derecha y otro 5% de incapacidad por una condición orgánica lumbosacral. Posteriormente, la señora Díaz Olmo sufrió otra lesión en su trabajo conocida como esguince, la cual notificó a la CFSE y esta última le adjudicó un 5% de incapacidad en la región lumbosacral.

Tras varios trámites procesales, incluyendo la celebración de una vista médica y el diagnóstico de la condición radiculopatía lumbar, el 22 de noviembre de 2010, la Comisión elevó al 10% la incapacidad para las funciones fisiológicas generales relacionadas con la condición lumbar. En dicha determinación, la propia Comisión ordenó a que se le efectuaran los descuentos de lo que se le hubiera pagado anteriormente. **Cabe mencionar que la señora Díaz Olmo no solicitó la celebración de una vista pública ante la Comisión sobre esta decisión**.

Más adelante, en lo relacionado con la condición lumbar que le aquejaba a la señora Díaz Olmo, la CFSE concluyó que el caso era académico puesto que ya se le había otorgado a la Recurrida un 10% por sus padecimientos lumbares. Esta decisión fue apelada el 28 de marzo de 2011. Finalmente, el 1 de julio de 2024, la Comisión resolvió que la señora Díaz Olmo poseía una incapacidad parcial permanente equivalente al 5% de las funciones fisiológicas generales por la condición de radiculopatía,

independiente a la incapacidad de esguince lumbrosacral y concluyó que el descuento realizado, de conformidad con la *Resolución* de 22 de noviembre de 2020 era indebido.

Conforme hemos adelantado en los acápites anteriores, la jurisdicción es el poder o autoridad que poseen los tribunales y las agencias administrativas para resolver las controversias que tienen ante sí. Cobra Acquisitions v. Municipio de Yabucoa et al., *supra*, pág. 394. Ninguna entidad puede asumir jurisdicción en los casos que no la tiene. Allied Mgmt. Group. v. Oriental Bank, *supra*, pág. 386. En el contexto de accidentes en el trabajo, para que la Comisión posea jurisdicción sobre la disputa, el empleado lesionado debe recurrir a ella dentro del término de 30 días de recibir la notificación de la decisión adversa. De no ser así, la referida entidad carece de jurisdicción sobre el asunto y, por consiguiente, no puede entrar en los méritos de la controversia.

Tras un análisis minucioso de los documentos que obran en el expediente ante nuestra consideración, incluyendo las determinaciones de la CFSE y las *Resoluciones* emitidas por la Comisión en el caso de autos, hemos llegado a la conclusión de que esta última no poseía jurisdicción para modificar el porcentaje de incapacidad otorgado a la señora Díaz Olmo, luego de celebrarse la vista médica. Nótese que el 22 de noviembre de 2010 y notificada el 21 de diciembre del mismo año, la Comisión determinó mediante *Resolución* que la Recurrida poseía un 10% de incapacidad de las funciones fisiológicas generales por condición lumbar, incluyendo la radiculopatía lumbar.

A tenor con lo anterior, la señora Díaz Olmo tenía hasta el 20 de enero de 2011 para solicitar una vista pública para se reconsiderara la decisión sobre la adjudicación del porcentaje de su incapacidad que la Comisión le reconoció por las condiciones lumbares que padecía. **No obstante, a pesar de estar representada legalmente durante todo el proceso administrativo, la Recurrida optó por no apelar la aludida *Resolución* y como resultado, esta determinación advino final y firme**. Lo anterior implica que la Comisión no tenía jurisdicción para variar o

modificar el porcentaje de incapacidad otorgado, ni para determinar que la condición de radiculopatía es una condición separada del esguince lumbrosacral, ya que el 22 de noviembre de 2010 se había determinado que ambas condiciones, en conjunto, representaban un 10% de incapacidad. Por consiguiente, la Comisión cometió los errores señalados.

En lo que respecta a la "**Moción Solicitando Desestimación**", la representación legal de la Recurrida alega que no fue notificado de la "**Moción de Reconsideración**" presentada por la CFSE el 24 de julio de 2024, ya que el número correcto de la dirección de su urbanización es 810 y no 210. Sin embargo, al revisar el legajo apelativo, nos percatamos que este aceptó que fue notificado adecuadamente de la *Resolución* emitida por la Comisión el 1 de junio de 2024. De dicho dictamen se desprende que la Recurrida fue notificada a través de la siguiente dirección: Ave. San Patricio 210 Las Lomas Río Piedras, P.R. 00921, ubicación que alegó no ser la correcta en la referida "**Moción de Desestimación**". Por consiguiente, no nos convence su postura de que no fue notificado debidamente de la solicitud de reconsideración y, por tanto, que estemos privados de jurisdicción para entender en los méritos del recurso que nos ocupa. Nótese que ante el reconocimiento expreso de la Recurrida de que fue notificada adecuadamente la *Resolución* de 1 de julio de 2024, no puede a esta etapa de los procedimientos plantear que no fue notificado correctamente de la "**Moción de Reconsideración**", cuando la misma fue remitida a la misma dirección que le fue notificada el dictamen recurrido. Después de todo, "los jueces no podemos ser tan ingenuos como para creer lo que nadie más creería". Rivera v. Ins. Wire Prods., Corp., 158 DPR 110, 125 (2002).

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte de la presente *Sentencia*, se *revoca* la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones