EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Irma Torres Rivera<br><br>Recurrida<br><br>v.<br><br>Econo Rial, Inc.<br><br>Peticionaria | Certiorari<br><br>2021 TSPR 150<br><br>208 DPR ____ |

Número del Caso:  CC-2020-128

Fecha: 18 de noviembre de 2021

Tribunal de Apelaciones:

    Panel Especial

Abogados de la parte peticionaria:

    Lcdo. Ricardo Pizarro
    Lcda. Viviana M. Mejías Díaz

Abogados de la parte recurrida:

    Lcdo. Carlos Mondríguez Torres
    Lcda. Denise G. Dubocq Berdeguez

Materia: Derecho laboral: Cálculo matemático para determinar la cuantía por concepto de salarios dejados de percibir a los que tiene derecho una empleada que fue despedida de forma discriminatoria y que devengó ingresos de otros medios durante el periodo en que el despido estuvo vigente.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Irma Torres Rivera<br><br>Recurrida<br><br>v.<br><br>Econo Rial, Inc.<br><br>Peticionaria | CC-2020-128 | *Certiorari* |

Opinión del Tribunal emitida por el Juez Asociado SEÑOR FELIBERTI CINTRÓN.

En San Juan, Puerto Rico, a 18 de noviembre de 2021.

El presente caso requiere que evaluemos el cálculo matemático realizado por los foros recurridos para determinar la cuantía por concepto de salarios dejados de percibir[1] a los que tiene derecho una empleada que fue despedida de forma discriminatoria y que devengó ingresos de otros medios durante el periodo en que el despido estuvo vigente. Particularmente, debemos resolver en qué momento se deben descontar dichos ingresos de la cuantía por concepto de salarios dejados de percibir a la que tiene derecho la empleada perjudicada. Esto es, ¿antes o después de aplicar la doble penalidad dispuesta por ley?

---

[1] Para fines de la argumentación y discusión en el presente caso, se utilizarán indistintamente los términos "salarios dejados de percibir", "salarios dejados de devengar", "haberes dejados de percibir" y "haberes dejados de devengar".

Adelantamos que, en atención al carácter reparador y no punitivo de los estatutos laborales aplicables, resolvemos que los ingresos obtenidos por la recurrida por otros medios deberán ser descontados de la cuantía por concepto de haberes dejados de percibir <u>previo</u> a imponer la doble penalidad dispuesta por ley.

Pasemos a delinear los hechos pertinentes a la controversia planteada.

## I.

El 18 de noviembre de 2013, la Sra. Irma Torres Rivera (señora Torres Rivera o recurrida) presentó una *Querella* sobre despido injustificado en su modalidad de despido constructivo, discrimen por razón de edad, discrimen por razón de impedimento y represalias en el empleo en contra de Econo Rial, Inc. (Econo o peticionaria). Ello, al amparo de las siguientes leyes: la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, conocida como la *Ley de indemnización por despido sin justa causa*, 29 LPRA sec. 185a *et seq.* (Ley Núm. 80); la Ley Núm. 100 de 30 de junio de 1959, según enmendada, conocida como la *Ley contra el discrimen en el empleo*, 29 LPRA sec. 146 *et seq.* (Ley Núm. 100); la Ley Núm. 44 de 2 de julio de 1985, según enmendada, conocida como la *Ley para prohibir el discrimen contra las personas con impedimentos físicos, mentales o sensoriales*, 1 LPRA sec. 501 *et seq.* (Ley Núm. 44), y la Ley Núm. 115 de 20 de diciembre de 1991, según enmendada, conocida como la *Ley contra el despido injusto o represalias a todo empleado*

*por ofrecer testimonio ante un foro legislativo, administrativo o judicial*, 29 LPRA sec. 194 *et seq.* (Ley Núm. 115). La recurrida se acogió al trámite sumario dispuesto por la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, conocida como la *Ley de procedimiento sumario de reclamaciones laborales*, 32 LPRA sec. 3118 *et seq.* (Ley Núm. 2).[2]

Luego de varias incidencias procesales - que incluyeron el desfile de prueba testifical, pericial y documental -, el 5 de octubre de 2018 el Tribunal de Primera Instancia emitió una *Sentencia* en la cual resolvió lo siguiente:

> [...] se declara Con Lugar la causa de acción de despido injustificado en su modalidad de despido implícito o constructivo; se declaran Con Lugar la causa de acción de discrimen por razón de edad bajo la Ley [Núm.] 100 y discrimen por razón de impedimento bajo la Ley [Núm.] 44. Por otro lado, desestimamos la causa de acción por represalias al amparo de la Ley [Núm.] 115.
>
> **Se ordena la reinstalación inmediata de la Sra. Irma Torres Rivera como repostera en el Departamento de Bakery de Econo Rial de Fajardo y se conceden las siguientes cuantías: $100,456.00 más la doble penalidad por salarios dejados de devengar a razón de $290.00 semanales desde el 8 de febrero de 2012 hasta el presente para un total de $200,912.00 en salarios dejados de devengar; $10,000.00 en angustias mentales más la doble penalidad para un total de $20,000.00 en daños por angustias mentales y $27,614.00 en honorarios de abogados a ser pagados directamente a su representación legal.[3]**
> (Énfasis suplido).

---

**2** El 7 de marzo de 2014 fue presentada una *Querella enmendada*. Véase *Querella enmendada*, Apéndice del *Certiorari*, págs. 10-18.

**3** Véase *Sentencia*, Apéndice del *Certiorari*, págs. 1634-1635.

En desacuerdo, Econo acudió al Tribunal de Apelaciones en donde planteó, entre otros señalamientos, que el Tribunal de Primera Instancia erró al no descontar de los haberes dejados de percibir el ingreso recibido por la recurrida durante el periodo en que el despido estuvo vigente.

Con relación a este error, el Tribunal de Apelaciones, mediante una *Sentencia* emitida el 6 de febrero de 2020, puntualizó que de la prueba testifical presentada surgía que, luego de su despido, la recurrida recibió ingresos que totalizaban la cantidad de $53,307.00,[4] los cuales se desglosaban de la siguiente manera:

- Beneficios por desempleo - $3,458.00

- Ingreso por trabajo - $45,049.00
  año 2014- $10,140.00
  año 2015- $10,920.00
  año 2016-  $8,372.00
  año 2017-  $8,372.00
  año 2018-  $7,245.00
  Total=     $45,049.00

- Confección de bizcochos años 2013-2018 - $4,800.00

                    .   .   .   .   .   .   .   .[5]

Con respecto a este extremo, el foro apelativo intermedio razonó que:

> Según el derecho antes esbozado, un empleado que sea despedido ilegalmente y que haya recibido ingresos, por concepto de trabajos obtenidos y realizados durante el periodo [en el] que estuvo cesanteado, el patrono podrá deducir dichos ingresos de la cuantía a otorgarse por concepto de salarios dejados de percibir

---

[4]   Véase *Sentencia*, Apéndice del *Certiorari*, págs. 1795-1796. Véase, además, *Transcripción [de la] vista de juicio en su fondo*, Apéndice del *Certiorari*, págs. 614-616.

[5]   Véase *Sentencia*, Apéndice del *Certiorari*, págs. 1795-1796.

independientemente de cuál [sea] la fuente de donde provienen los mismos.[6]

.  .  .  .  .  .  .  .

Cónsono con lo anterior, **habiendo el TPI concedido la cantidad de $200,912.00 por concepto de salarios dejados de devengar, procede que se descuente de la misma la cantidad de $53,307.00, por concepto de salarios devengado[s] en otros empleos.**

En consecuencia, **la cantidad por concepto de salarios dejados de devengar que se adjudica a la Sra. Irma Torres Rivera, [es de] $147,605.00.** (Énfasis suplido).[7]

Así las cosas, el Tribunal de Apelaciones modificó la cuantía otorgada a la recurrida por concepto de salarios dejados de devengar a $147,605.00.[8] Ante ello, la peticionaria solicitó al foro apelativo intermedio una enmienda *nunc pro tunc* de dicha *Sentencia*, por entender que la cantidad de $53,307.00 por concepto de los ingresos devengados por la recurrida en otros empleos debía ser descontada del número base de $100,456.00 por concepto de salarios dejados de devengar, en lugar de los $200,912.00, ya que en esta última cifra se había impuesto la doble penalidad dispuesta por la Ley Núm. 44 y la Ley Núm. 100.[9] Sin embargo, el Tribunal de Apelaciones denegó dicha solicitud mediante una *Resolución* emitida el 24 de febrero de 2020.[10]

---

[6]  Íd., pág. 1795.

[7]  Íd., pág. 1796.

[8]  Íd., pág. 1800.

[9]  Véase *Urgente moción en solicitud de enmienda nunc pro tunc*, Apéndice del *Certiorari*, págs. 1801-1803.

[10]  Véase *Resolución*, Apéndice del *Certiorari*, pág. 1811.

Aún en desacuerdo, Econo recurrió ante este Tribunal por medio de un recurso de *certiorari*. Entre otros señalamientos de error, alegó que:

A. Erró el Tribunal de Apelaciones al descontar, contrario a derecho, la cantidad de $53,307.00 correspondiente a salarios devengados por la Querellante en otros empleos, de la partida de $200,912.00, suma que incluye la penalidad estatutaria, en lugar de la partida de $100,456.00 concedid[a] por el Tribunal de Primera Instancia por concepto de salarios dejados de devengar. Ello resulta en una Sentencia contraria a derecho por la suma de $53,307.00. El Tribunal de Apelaciones tuvo la oportunidad de corregir dicho error mediante una enmienda [*nunc pro tunc*], solicitada por la Peticionaria y determin[ó] no hacerlo, aun cuando expresamente emitió una Resolución que declar[ó] No Ha Lugar la Oposición a Urgente Moción en Solicitud de Enmienda [*Nunc Pro Tunc*] presentada por la recurrida el día 19 de febrero de 2020.[11]

---

[11] Véase *Certiorari*, pág. 7. Los restantes señalamientos de error fueron los siguientes:

B. Erró el Tribunal de Apelaciones al concluir que la oferta de trabajo hecha por la Querellada-Peticionaria a la Querellante-Recurrida no fue incondicional. Ello resulta en una Sentencia contraria a derecho al conceder salarios dejados de devengar para un período posterior a la fecha en que la Querellante rechazó una oferta incondicional de reinstalación.

C. Erró el Tribunal de Apelaciones al resolver que el Tribunal de Primera Instancia no erró al declarar Con Lugar la causa de acción de discrimen por razón de impedimento bajo la Ley Núm. 44 de 2 de julio 1985, según enmendada.

D. Erró el Tribunal de Apelaciones al concluir que la Querellante fue víctima de actuaciones discriminatorias e injustificadas por razón de su edad.

E. Erró el Tribunal de Apelaciones al resolver que en el caso de autos se cumplen todos los elementos que configuran un despido tácito. Íd.

Luego de varios trámites procesales,[12] el 4 de diciembre de 2020, emitimos una *Resolución* en reconsideración mediante la cual concedimos a la recurrida un término de veinte (20) días, contado a partir de la notificación de dicha *Resolución*, para que mostrara causa por la cual no debíamos modificar la *Sentencia* dictada por el Tribunal de Apelaciones, únicamente en cuanto al primer señalamiento de error. Es decir, el asunto relacionado con el cálculo aritmético de los salarios dejados de devengar otorgados a la recurrida.

Contando con la comparecencia de ambas partes, procedemos a consignar el derecho pertinente a la controversia ante nosotros.

**II.**

La Sección 1 de la Carta de Derechos de la Constitución de Puerto Rico dispone que:

> La dignidad del ser humano es inviolable. Todos los hombres son iguales ante la Ley. No podrá establecerse discrimen alguno por motivo de raza color, sexo, nacimiento, origen o condición social, ni ideas políticas o religiosas. Tanto las leyes como el sistema de instrucción pública encarnarán estos principios de esencial igualdad humana. Art. II, Sec. 1, Const. PR, LPRA, Tomo 1, ed. 2016, pág. 275.

La Ley Núm. 100 fue aprobada con el propósito de instrumentar el mandato constitucional de esencial igualdad

---

[12] El 1 de mayo de 2020 emitimos una *Resolución* en la que declaramos *no ha lugar* la Petición de *Certiorari*. Más adelante, el 25 de septiembre de 2020 emitimos una *Resolución* en la que declaramos *no ha lugar* la *Primera moción de reconsideración* presentada por Econo Rial, Inc. (Econo o peticionaria).

humana en el contexto obrero-patronal. Mestres Dosal v. Dosal Escandón, 173 DPR 62, 69 (2008). Esta legislación protege a los empleados y candidatos a empleo contra el discrimen por parte de patronos u organizaciones obreras. Véase Exposición de Motivos de la Ley Núm. 100, pág. 300.

La Ley Núm. 100 amplió el listado de las clases protegidas constitucionalmente contra el discrimen, reconociéndole determinados remedios a todo empleado o candidato a empleo que hubiese sufrido un acto adverso en el empleo, por razón de:

> […] edad, según ésta se define más adelante, raza, color, sexo, orientación sexual, identidad de género, origen social o nacional, condición social, afiliación política, o ideas políticas o religiosas, o por ser víctima o ser percibida como víctima de violencia doméstica, agresión sexual o acecho, o por ser militar, ex-militar, servir o haber servido en las Fuerzas Armadas de los Estados Unidos o por ostentar la condición de veterano del empleado o solicitante de empleo. Art. 1 de la Ley Núm. 100, 29 LPRA sec. 146.

Para garantizar su cumplimiento, la Ley Núm. 100 establece una acción civil y una penal en contra de todo patrono que incurra en la conducta discriminatoria. Véanse: Art. 1 de la Ley Núm. 100, 29 LPRA sec. 146; García Pagán v. Shiley Caribbean, etc., 122 DPR 193, 199-200 (1988).

En lo que respecta a la acción civil, la Ley Núm. 100 establece que el patrono que violente lo dispuesto en dicha ley incurrirá en responsabilidad civil "[p]or una suma igual al doble del importe de los daños que el acto haya causado al empleado o solicitante de empleo". Art. 1(a)(1) de la

Ley Núm. 100, 29 LPRA sec. 146(a)(1). Por tanto, la compensación dispuesta por el artículo precedente incluye: el pago de todos los daños ocasionados por el acto ilegal y, como penalidad, el pago de una suma de igual cantidad. A esta última partida se le conoce como la doble penalidad y "abarca tanto los daños económicos como los sufrimientos y angustias mentales que pruebe el promovente". Santiago Ortiz v. Real Legacy et al., 2021 TSPR 12, 205 DPR ___ (2021). Véase, además, S.L.G. Afanador v. Roger Electric Co., Inc., 156 DPR 651, 667 (2002). Asimismo, el estatuto permite que el tribunal ordene la reposición del trabajador en su empleo y, además, el cese y desista del acto discriminatorio. Art. 1 de la Ley Núm. 100, *supra*.

Por su parte, la Ley Núm. 44 fue aprobada en atención a la necesidad de "erradicar toda actitud discriminatoria en la conciencia social puertorriqueña en [lo que] respecta a los derechos de las personas con impedimentos físicos o mentales", reconociendo – a su vez – que "[u]na de las áreas en donde se hace notar con mayor fuerza el discrimen contra las personas con impedimentos es el área de empleo". Véase Exposición de Motivos de la Ley Núm. 44, pág. 167. Este estatuto prohíbe a las instituciones públicas y privadas ejercer, poner en vigor o utilizar procedimientos o prácticas discriminatorias en el empleo en contra de personas con algún tipo de impedimento físico, mental o sensorial por el solo hecho de tal impedimento. Art. 5 de la Ley Núm. 44, 1 LPRA sec. 505. Dicha prohibición se

extiende al "reclutamiento, compensación, beneficios marginales, facilidades de acomodo razonable y accesibilidad, antigüedad, participación en programas de adiestramiento, promoción y cualquier otro término, condición o privilegio en el empleo". Íd.

De otra parte, en lo concerniente a los remedios que provee dicha legislación, el Art. 13 de la Ley Núm. 44, 1 LPRA sec. 511, dispone que:

> [l]os remedios, facultades, autoridad y procedimientos establecidos en [la Ley Núm. 100] estarán disponibles para el Secretario del Trabajo y Recursos Humanos y para cualquier persona que entienda que ha sufrido discrimen en el empleo por razón de impedimento en violación a las disposiciones de [este estatuto]. Íd.

Por otro lado, la Ley Núm. 44 requiere que sus disposiciones sean interpretadas de una forma liberal y no restrictiva, de manera que la interpretación sea la más beneficiosa para las personas con impedimentos. Art. 14 de la Ley Núm. 44, 1 LPRA sec. 511a.

Vemos, entonces, que todo empleado o candidato a empleo que haya sido discriminado en el empleo y presente una reclamación al amparo de la Ley Núm. 100, la Ley Núm. 44, o ambas, tendrá derecho – entre otros remedios – a una compensación igual al doble de todos los daños sufridos como consecuencia de la actuación discriminatoria por parte del patrono, así como a la reposición en el empleo.

Reiteradamente hemos señalado que la Ley Núm. 100 no establece limitación alguna con relación al tipo de daño que

habrá de resarcirse, por lo que el empleado tiene derecho a ser compensado tanto por los daños emocionales como los económicos, incluyendo una partida por la pérdida de ingresos. Ramírez Ferrer v. Conagra Foods PR, 175 DPR 799, 816 (2009); Mestres Dosal v. Dosal Escandón et als., *supra*, págs. 69-70; S.L.G. Afanador v. Roger Electric Co., Inc., *supra*, pág. 667; García Pagán v. Shiley Caribbean, etc., *supra*, pág. 122. Se trata – según hemos descrito - de un esquema reparador que procura "proveer a las víctimas de discrimen en el empleo de los instrumentos necesarios para que se le reparen los daños causados". Ramírez Ferrer v. Conagra Foods PR, *supra*, pág. 817. En ese contexto, hemos expresado que "nuestro ordenamiento jurídico fomenta un sistema completo de reparación en el área de daños", con el cual "se persigue llevar al perjudicado por una acción ilegal a su estado anterior, según sea posible". Íd., pág. 817.

Valga puntualizar que aun cuando hemos indicado que la reposición en el empleo es el remedio preferente en casos de despidos discriminatorios, por tratarse del remedio más completo, este Tribunal ha reconocido que ese remedio no siempre es posible y que su imposibilidad tiene un efecto sobre la compensación por daños económicos a los que tendría derecho el perjudicado. Íd., pág. 818; S.L.G. Afanador v. Roger Electric Co., Inc., *supra*, págs. 668-669.

Los daños económicos que pueden ser compensados en virtud de una causa de acción al amparo de la Ley Núm. 100 incluyen: los haberes dejados de percibir, también conocidos

como "paga atrasada" o "back pay", y - en aquellos casos en los que no sea posible la reposición en el empleo - el pago por pérdida de ingresos futuros o "front pay". Ramírez Ferrer v. Conagra Foods PR, *supra*, págs. 817-818; S.L.G. Afanador v. Roger Electric Co., Inc., *supra*, págs. 668-669. Hemos indicado que "[e]stos dos remedios, junto a la concesión de una compensación en concepto de daños morales, tienen como fin colocar al perjudicado en una situación similar a la que se encontraba justo antes de la acción ilegal". Ramírez Ferrer v. Conagra Foods PR, *supra*, pág. 819.

De otro lado, este Tribunal ha señalado que "[l]a paga atrasada es la compensación por los haberes dejados de percibir desde el despido hasta la fecha de la sentencia, **descontando los ingresos que durante ese per[i]odo obtuvo la parte demandante**". (Énfasis suplido). Íd. **El propósito de realizar el referido descuento a la cuantía por concepto de salarios dejados de percibir es poner en vigor el carácter reparador y no punitivo de los estatutos laborales que establecen dicho remedio.** Whittenburg v. Col. Ntra. Sra. Del Carmen, 182 DPR 937, 979 (2011); Rivera v. Ins. Wire Prods., Corp., 158 DPR 110, 128 (2002). Y es que, según hemos expresado consistentemente, siendo el propósito del pago de los salarios dejados de percibir el colocar al empleado despedido ilegalmente en el estado en que se encontraba previo al despido ilegal - entiéndase, como si el perjudicado hubiera continuado trabajando y, por

consiguiente, devengando tales ingresos – es necesario que se descuenten los salarios devengados por el empleado luego del despido y antes de que se dicte sentencia. Whittenburg v. Col. Ntra. Sra. Del Carmen, *supra*, pág. 979; Rivera v. Ins. Wire Prods., Corp., *supra*, pág. 129. Lo contrario tendría el efecto de alterar la naturaleza reparadora de los estatutos que proveen este remedio a una con carácter punitivo. Íd.

A tono con lo expuesto, recientemente este Tribunal tuvo ante su consideración controversias cuyas causas de acción estuvieron fundamentadas en la Ley Núm. 100 y otras leyes protectoras, así como en disposiciones análogas en el sector público, las cuales requirieron el desarrollo de fórmulas aritméticas con el propósito de despejar dudas y poner en vigor el carácter reparador de dichas leyes.

De esta forma, en Zambrana García v. ELA et al., 204 DPR 328 (2020), caso resuelto al amparo de la derogada Ley Núm. 5 de 14 de octubre de 1975, según enmendada, conocida como la *Ley de Personal del Servicio Público de Puerto Rico*, 3 LPRA ant. sec. 1301 *et seq.*, este Tribunal tuvo la oportunidad de definir y desarrollar la fórmula matemática para determinar cuál es el ingreso neto que debe ser deducido de la compensación por concepto de haberes dejados de percibir a los que tiene derecho un empleado público que ha sido cesanteado ilegalmente. Allí, definimos el ingreso neto como "el salario que devengó el empleado despedido por trabajos obtenidos y realizados durante la

cesantía correspondiente a la cantidad de horas que habría trabajado para el patrono si no hubiera sido cesanteado, menos los gastos en que incurrió para devengarlo". Zambrana García v. ELA et al., *supra*, pág. 331. Al hacerlo, expresamos que "[e]l propósito de calcular el ingreso neto es cumplir con que el remedio no sea punitivo, sino reparador al empleado cesanteado". Íd., pág. 338. Además, explicamos que "s[ó]lo se descuentan de la compensación aquellos ingresos que sustituyeron los que el empleado habría percibido de su antiguo empleo si no hubiese sido cesanteado". Íd.

Ahora bien, en cuanto a la fórmula matemática, determinamos que al momento de calcular la partida que el patrono deberá pagar a un **empleado público** por concepto de salarios dejados de devengar, se deberá considerar lo siguiente:

> [...] [el ingreso] que el empleado devengó en su otro empleo, durante las horas que habría trabajado para el patrono que lo cesanteó **(I)**. A esa suma se le resta los gastos incurridos para devengar ese ingreso **(G)**. El resultado de ese cálculo es el ingreso neto **(I-G=IN)** [...]
>
> Entonces, al salario total que el empleado dejó de devengar mientras estuvo cesanteado **(S)** se le resta el ingreso neto **(IN)**. El remanente de este cálculo, si alguno, es la cantidad que el patrono pagará al empleado restituido por concepto de salario dejado de devengar, que identificamos como cantidad total **(CT)** en la siguiente fórmula:

>       **S-IN=CT.** (Énfasis suplido).  Zambrana García
>       v. ELA, et al., *supra*, pág. 339.[13]

De otro lado, Santiago Ortiz v. Real Legacy et al., *supra*, es un caso en el cual fueron acumuladas las causas de acción sobre despido injustificado y discriminatorio al amparo de la Ley Núm. 80 y la Ley Núm. 100 y, además, tramitado en conformidad con las disposiciones de la Ley Núm. 2. En éste, el foro de instancia dictó una sentencia parcial en rebeldía en la que declaró *con lugar* la causa de acción sobre despido injustificado, concedió el remedio de la mesada y señaló una vista en rebeldía para dilucidar los daños relacionados con la reclamación sobre discrimen. Celebrada la vista, el foro primario determinó las cantidades procedentes por concepto de daños económicos y angustias mentales, las cuales sumó y luego les restó la cantidad inicialmente concedida por concepto de la mesada. Posteriormente, el foro apelativo intermedio modificó las sumas concedidas por el foro de instancia. Solicitada oportunamente nuestra revisión, y ante las discrepancias en los cálculos realizados por los foros recurridos, este Tribunal tuvo ante su consideración la siguiente controversia:

>       ¿[C]uál es la fórmula matemática que los
>       tribunales utilizarán cuando, ante un caso por

---

[13] En Zambrana García v. ELA et als., 204 DPR 328, 329 (2020), resolvimos, además, que "en caso de que el empleado cesanteado tenga un segundo empleo al momento de la cesantía y continúe desempeñándose en [é]ste, s[ó]lo se descontará la cantidad de horas adicionales —si alguna— que el empleado dedicó a su segundo empleo luego de la cesantía y que correspondan a la cantidad de horas que dedicaba a su empleo, del cual fue cesanteado".

despido injustificado y discriminatorio, la mayor cuantía proviene de una legislación laboral que impone la doble penalidad? Es decir, […] **¿cuándo restamos la mesada que resultó de menor cantidad de la adjudicada por [la] Ley [Núm.] 100,** *supra*, **antes o después de la imposición de la doble penalidad?** <u>Santiago Ortiz v. Real Legacy et al.</u>, *supra*.

Allí resolvimos que "ante una reclamación por la Ley [Núm.] 80, *supra*, y por [la] Ley [Núm.] 100, *supra*, o una medida obrero-patronal que incluya la doble penalidad como resarcimiento y proceda la deducción de la mesada, ésta se hará luego de implementar la doble penalidad de la legislación social". <u>Íd.</u>

Para arribar a dicha conclusión, consideramos, no sólo la política pública que rige en nuestro ordenamiento laboral, la cual busca proteger al empleado o candidato a empleo de acciones ilegales por parte de los patronos, sino también – entre otras particularidades – que la responsabilidad civil en la que incurre un patrono que lleva a cabo acciones discriminatorias acarrea una responsabilidad civil igual al doble de los daños sufridos por el empleado. <u>Íd.</u> Es decir, que siendo la doble penalidad parte de ese remedio, el deducir la mesada antes de la aplicación de la doble penalidad hubiera resultado en un remedio incompleto, entiéndase, uno inferior al provisto por la Ley Núm. 100. <u>Íd.</u>

Cabe señalar que en ninguno de estos dos casos fue necesario expresarnos sobre en qué momento - si antes o después de la aplicación de la doble penalidad - debe

deducirse el ingreso obtenido por un empleado luego del despido ilegal de la cuantía por concepto de haberes dejados de percibir a la que tiene derecho.[14] **En cambio, el caso ante nuestra consideración nos brinda esa oportunidad.**

Expuesto el derecho aplicable, resolvemos.

### III.

Según adelantamos, el único asunto ante nuestra consideración es aquel esbozado por la peticionaria en su primer señalamiento de error. En síntesis, Econo sostiene que el Tribunal de Apelaciones erró en el cálculo matemático realizado para computar la partida que debe ser concedida a la recurrida por concepto de salarios dejados de devengar. En específico, plantea que el foro apelativo intermedio actuó contrario a derecho al descontar los ingresos obtenidos por la recurrida en otros empleos de la cantidad otorgada por el foro primario por concepto de salarios

---

[14] En Zambrana García v. ELA et al., *supra*, la reclamación fue presentada al amparo de la derogada Ley Núm. 5 de 14 de octubre de 1975, conocida como la *Ley de Personal del Servicio Público de Puerto Rico*, 3 LPRA ant. secs. 1301 *et seq.*, la cual no incluye como parte de sus remedios la doble penalidad de los daños ocasionados por la actuación discriminatoria. En específico, la Sección 7.17 del derogado estatuto disponía lo siguiente:

> (1) En los casos en que la Junta resuelva a favor del querellante, dictará las órdenes remediales pertinentes.

> (2) En casos de destitución, si la decisión de la Junta es favorable al empleado, ésta deberá ordenar su restitución a su puesto, o a un puesto similar. Asimismo deberá ordenar el pago total o parcial de los salarios dejados de percibir por éste desde la fecha de la efectividad de la destitución, y la concesión de todos los beneficios marginales a que éste hubiese tenido derecho. Sección 7.17 de la *Ley de Personal del Servicio Público de Puerto Rico*, 3 LPRA ant. sec. 3197.

Por su parte, en Santiago Ortiz v. Real Legacy et al., 2021 TSPR 12, 205 DPR ___ (2021), si bien las cantidades utilizadas en la fórmula matemática incluyeron la deducción del ingreso obtenido en el nuevo empleo, no fue necesario – por no estar en controversia – expresarnos sobre el particular.

dejados de percibir luego de haber aplicado la doble penalidad dispuesta por ley.

Por su parte, la recurrida argumenta, en esencia, que el cálculo matemático realizado por el Tribunal de Apelaciones fue el correcto. Asegura que el cálculo propuesto por Econo conduce a una interpretación restrictiva de los remedios a ser concedidos por la Ley Núm. 100 y la Ley Núm. 44, lo que está vedado por esta última.

En el presente caso, el Tribunal de Primera Instancia declaró con lugar las causas de acción sobre despido injustificado en la modalidad de despido constructivo, así como las causas de acción sobre discrimen por razón de edad y por razón de impedimento. No obstante, desestimó la causa de acción sobre represalias. Conforme a ello, ordenó la reinstalación inmediata de la señora Torres Rivera a su antiguo empleo, así como el pago de las siguientes cuantías a su favor:

> **$100,456.00 más la doble penalidad por salarios dejados de devengar** a razón de $290.00 semanales desde el 8 de febrero de 2012 hasta el presente **para un total de $200,912.00 en salarios dejados de devengar**; $10,000.00 en angustias mentales más la doble penalidad para un total de $20,000.00 en daños por angustias mentales y $27,614.00 en honorarios de abogados a ser pagados directamente a su representación legal.[15] (Énfasis suplido).

De lo anterior se puede colegir que el foro primario no descontó partida alguna relacionada con los ingresos obtenidos por la señora Torres Rivera en otros empleos

---

[15] Véase *Sentencia*, Apéndice del *Certiorari*, págs. 1634-1635.

mientras se encontraba cesanteada, aun cuando se presentó prueba de ello.

Por su parte, el Tribunal de Apelaciones **modificó la cuantía concedida a la recurrida por concepto de salarios dejados de devengar a $147,605.00** y, así modificada, confirmó la *Sentencia* dictada por el Tribunal de Primera Instancia. Para obtener dicha cifra, el foro apelativo intermedio computó los ingresos obtenidos por la recurrida en otros empleos, ascendentes a $53,307.00, y los descontó de la **partida total** por concepto de los salarios dejados de devengar adeudados por Econo ($200,912.00), la cual, por mandato de ley, incluía la doble penalidad. Es en este último extremo – al haber aplicado la doble penalidad previo a restar el monto de los ingresos devengados por la recurrida por otros medios – donde radica el error en el cálculo. Veamos.

Conforme a la discusión del derecho aplicable que antecede, entre los remedios civiles dispuestos por la Ley Núm. 100 se encuentra el pago de una suma igual al doble de todos los daños ocasionados al empleado por motivo de la actuación discriminatoria, lo que incluye el pago de los haberes dejados de percibir. Al hacer alusión a una suma igual al doble de los daños, el estatuto se refiere al pago de dos (2) partidas, a saber: (1) aquella por concepto de los daños, en este caso, los salarios dejados de percibir, y (2) una partida de igual cantidad por concepto de la doble penalidad.

Como explicáramos, este Tribunal ha sido consistente al reconocer la necesidad de deducir aquellos ingresos obtenidos por el empleado luego del despido ilegal de la cuantía por concepto de los haberes dejados de percibir a los que tiene derecho el perjudicado. Ramírez Ferrer v. Conagra Foods, PR, *supra*, pág. 823; Whittenburg v. Col. Ntra. Sra. Del Carmen, *supra*, pág. 979; Rivera v. Ins. Wire Prods., Corp., *supra*, pág. 128. Esa deducción tiene el propósito de poner en vigor el carácter reparador y no punitivo de las leyes que proveen dicho remedio. Íd. De esta forma, siendo la Ley Núm. 100 y la Ley Núm. 44 estatutos reparadores, no vemos razón por la cual debamos alejarnos de ese proceder y en su lugar concluir, como plantea la recurrida, que en casos tramitados al amparo de dichos estatutos, se deben deducir los ingresos obtenidos por el perjudicado en otros empleos una vez aplicada la doble penalidad. Nótese que realizar el cálculo de esa forma tendría el efecto de evitar que se deduzcan los ingresos obtenidos por otras fuentes de la partida por concepto de salarios dejados de percibir. Si bien la Ley Núm. 44 requiere que la interpretación que se realice sobre la misma se lleve a cabo de la manera más favorable al empleado perjudicado, tal interpretación no puede tener el efecto de cambiar la naturaleza reparadora del estatuto en cuestión. De esta forma, concluimos que el cálculo realizado por el foro apelativo intermedio fue errado en tanto y en cuanto dedujo los ingresos obtenidos por la recurrida por otros

medios luego de aplicar la doble penalidad dispuesta por ley.

A tenor con lo expuesto, **resolvemos que al calcular la partida de haberes dejados de percibir a los que tiene derecho un empleado que ha sido despedido de manera discriminatoria, será necesario deducir de dicha partida los ingresos obtenidos por el empleado perjudicado por otros medios** – desde el despido hasta la fecha en que se dictó la sentencia – **antes de aplicar la doble penalidad dispuesta por ley.** Reiteramos que proceder de otra manera tornaría en punitiva la aplicación de la doble penalidad dispuesta tanto por la Ley Núm. 100 como por la Ley Núm. 44, lo que derrotaría el carácter reparador con el cual se formularon dichos estatutos.

Por consiguiente, para fines de la controversia que hoy atendemos, el cálculo correcto consiste en descontar de los salarios dejados de devengar **(S)** los ingresos generados por otros medios desde la fecha del despido hasta la fecha en que se dicte la sentencia **(I)**, lo que resultará en la cantidad total a pagar por concepto de haberes dejados de percibir **(CT)**; es a esta última cantidad a la que se le aplicará la doble penalidad dispuesta por ley. Así, la fórmula matemática que deberá ser utilizada para calcular la cuantía por concepto de haberes dejados de percibir en reclamaciones laborales presentadas al amparo de estatutos que incluyan el remedio de la doble penalidad es la siguiente: **S – I = CT x 2.**

Al realizar este cálculo, el foro primario deberá considerar los salarios dejados de devengar por la recurrida, así como los ingresos generados por ésta por otros medios, desde el despido hasta la fecha en que se dicte sentencia.

**IV.**

Por los fundamentos que anteceden, se expide el auto de *certiorari* solicitado en reconsideración y se revoca parcialmente la *Sentencia* dictada por el Tribunal de Apelaciones el 6 de febrero de 2020 en cuanto al cálculo matemático de los salarios dejados de devengar a los que tiene derecho la recurrida. Así modificada, se confirma dicha *Sentencia* en sus demás partes y se devuelve el caso al Tribunal de Primera Instancia para que determine – en conformidad con lo resuelto en esta *Opinión* – la cuantía por concepto de salarios dejados de percibir que Econo deberá pagar a la señora Torres Rivera. Al hacerlo, deberá considerar los haberes dejados de percibir por la recurrida hasta la fecha de dictada la sentencia, así como los ingresos generados por la recurrida por otros medios durante ese periodo.

Se dictará Sentencia de conformidad.

ROBERTO FELIBERTI CINTRÓN
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Irma Torres Rivera<br><br>    Recurrida<br><br>        v.<br><br>Econo Rial, Inc.<br><br>    Peticionaria | CC-2020-128 | *Certiorari* |

SENTENCIA

En San Juan, Puerto Rico, a 18 de noviembre de 2021.

Por los fundamentos expuestos en la *Opinión* que antecede, la cual se hace formar parte íntegra de la presente *Sentencia*, se expide el auto de *certiorari* solicitado en reconsideración y se revoca parcialmente la *Sentencia* dictada por el Tribunal de Apelaciones el 6 de febrero de 2020 en cuanto al cálculo matemático de los salarios dejados de devengar a los que tiene derecho la recurrida. Así modificada, se confirma dicha *Sentencia* en sus demás partes y se devuelve el caso al Tribunal de Primera Instancia para que determine – en conformidad con lo resuelto en esta *Opinión* – la cuantía por concepto de salarios dejados de percibir que Econo deberá pagar a la señora Torres Rivera. Al hacerlo, deberá considerar los haberes dejados de percibir por la recurrida hasta la fecha de dictada la sentencia, así como los ingresos generados por la recurrida por otros medios durante ese periodo.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez concurre en parte y disiente en parte y emite la expresión siguiente:

Estoy de acuerdo con que procede descontar la cantidad de salarios dejados de percibir durante el tiempo de su cesantía antes de imputar la doble penalidad. Hernández v. Mun. de Aguadilla, 154 DPR 199 (2001). De esta manera, el empleado obtiene una reparación real y no una doble compensación. Íd. pág. 209, citando a J.R.T. v. Ceide, 89 DPR 674, 686 (1963).

Destaco que la doble penalidad de la Ley Núm. 100 de 30 de junio de 1959, 29 LPRA sec. 146 *et seq*, y de la Ley Núm. 44 de 2 de julio de 1985, 1 LPRA sec. 511, es de naturaleza reparadora porque va dirigida hacia el trabajador discriminado. Por ello expresamos que "[e]l esquema reparador de este articulado —en protección de los trabajadores— pretende proveer a las víctimas de discrimen en el empleo de los instrumentos necesarios para que se le reparen los daños causados". Ramírez Ferrer v. Conagra Foods PR, 175 DPR 799, 816 (2009). Ello no significa que la doble penalidad no sea de carácter punitivo en contra del patrono. De hecho, por su naturaleza punitiva es que se duplica el salario dejado de percibir en beneficio del empleado.

Además, cabe distinguir la controversia que hoy atendemos de la que resolvimos recientemente en Santiago Ortiz v. Real Legacy et al., 2021 TSPR 12, 205 DPR __ (2021). Allí pautamos que procede descontar la mesada que provee la Ley Núm. 80 de 30 de mayo de 1976, 29 LPRA sec. 185(a) *et seq.*, luego de imponer la doble penalidad. Hoy determinamos restar los ingresos generados por otros empleos previo a imponer la doble penalidad. Ambas normas son compatibles. A diferencia de lo que ocurrió en Santiago Ortiz v. Real Legacy, supra, aquí no se trata de dos remedios otorgados por dos leyes distintas, sino un único remedio bajo la Ley Núm. 100, supra.

Ahora bien, disiento del proceder mayoritario porque no dispone de manera diáfana que la cantidad que obtuvo la Sra. Irma Torres Rivera **no se puede imputar como salario devengado por su esfuerzo laboral**. Recordemos que en Wittenburg v. Col. Ntra. Sra. Del Carmen, 182 DPR 937, 979 (2011), se interpretó la reserva provista por la Ley ACAA y se mencionó que: "el dinero que un trabajador ilegalmente despedido devengue de un **trabajo realizado después del despido**, pero antes de que recaiga sentencia a su favor en el pleito por violación de la reserva, se debe restar del monto del salario que dejó de percibir en el puesto original" (énfasis suplido). Asimismo, en Rivera v. Ins. Wire Prods., Corp., 158 DPR 110, 129 (2002) dijimos que "procede descontar los salarios que el recurrido devengó de los **empleos** posteriores al despido" (énfasis suplido). En Zambrana García v. ELA et al., 204 DPR 328, 338 (2020) enunciamos que "solo se descuentan de la compensación aquellos ingresos que sustituyeron los que el empleado habría

percibido de su antiguo empleo si no hubiese sido cesanteado". Igualmente, se definió "ingreso neto" como "el salario que el empleado despedido devengó en otro trabajo y que correspondería a las horas que habría laborado con el patrono que lo cesanteó, menos lo que gastó para realizar ese trabajo". Íd. Conforme a lo anterior, por la naturaleza del beneficio, no se puede imputar la cantidad que el empleado obtuvo como parte de los beneficios de desempleo al cálculo de salarios percibidos. Tal beneficio no es un ingreso devengado por trabajo realizado ni esfuerzo laboral. Dado que la Opinión no lo expresa de manera tajante, me veo obligada a disentir en parte.

El Juez Asociado señor Estrella Martínez disiente con Opinión escrita. El Juez Asociado señor Colón Pérez disiente y hace constar las siguientes expresiones:

Similar a como lo hicimos en *Zambrana García v. ELA,* 204 DPR 328 (2020) (Colón Pérez, Expresiones disidentes), disentimos del curso de acción seguido por una mayoría de este Tribunal en el presente caso. Ello, por entender que -- al igual que en el contexto del empleado público -- en el escenario del empleado de la empresa privada, que es despedido ilegalmente, no procede descontar de los salarios adeudados aquellos ingresos que éste haya recibido de otras fuentes mientras se encontraba cesanteado del cargo de forma ilegal. Cónsono con lo anterior, huelga señalar que, en la causa de epígrafe, no procedía dilucidar en qué momento se debían descontar los ingresos devengados de otras fuentes por una empleada que fue despedida de forma discriminatoria.

No obstante, una vez más, una mayoría de esta Curia opta por socavar injustificadamente los derechos de las personas trabajadoras y penalizar a aquel o aquella que no se cruza de brazos y busca remediar la situación económica en la que le colocó un despido ilegal. Con ello, no podemos estar de acuerdo.

El Juez Asociado señor Rivera García no intervino.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Irma Torres Rivera Recurrida v. Econo Rial, Inc. Peticionaria | CC-2020-128 | Certiorari |
|---|---|---|

Opinión disidente emitida por el Juez Asociado señor ESTRELLA MARTÍNEZ.

En San Juan, Puerto Rico, a 18 de noviembre de 2021.

Nuestro ordenamiento jurídico laboral está predicado en la apertura del Poder Judicial como ente reparador para beneficio de los trabajadores y las trabajadoras que sean víctimas de discrimen o acciones ilegales en el ámbito del trabajo. Hoy se ignoran varias normas y propósitos legislativos con el efecto de seguir cerrando esa vía y, en su lugar, se establecen tres (3) salvoconductos adicionales para aminorar la responsabilidad de los patronos del sector privado.

En primer término, el dictamen mayoritario establece que deben descontarse de la indemnización judicial todos los ingresos que hubiera recibido una obrera despedida ilegalmente durante el periodo de tiempo que duró el pleito. En segundo término, en dicho cómputo, desacertadamente se incluyen los beneficios por desempleo que ésta obtuviera a consecuencia de la acción ilegal de su empleador. Por último, como agravante, se establece que dicha deducción

deberá efectuarse antes de imponer la doble compensación requerida por los estatutos antidiscrimen en el empleo.

Bajo la premisa de no querer imponerle un carácter punitivo a los estatutos protectores laborales —a pesar de que ese es el claro propósito legislativo—, el efecto neto de la interpretación restrictiva que articula la norma mayoritaria es la reducción de la compensación a la que tiene derecho la víctima de un despido ilegal. Con ello, se premia desmedidamente al patrono que incurre en prácticas discriminatorias en el entorno laboral, concediéndole diversos salvoconductos que le permiten aminorar su responsabilidad civil.

Por considerar que el propósito legislativo de los estatutos antidiscrimen, en unión con las normas de hermenéutica en el ámbito laboral vigente, conducen a una conclusión contraria a la que arriba la Mayoría, disiento del dictamen mayoritario. A continuación, expongo los fundamentos que orientan mi disenso.

**I**

Del tracto fáctico de la controversia que hoy resolvemos surge que, tras la celebración de un juicio al amparo del proceso sumario de reclamaciones laborales, el Tribunal de Primera Instancia dictó sentencia y concluyó que Econo Rial, Inc. (Econo) incurrió en prácticas laborales ilícitas y discriminatorias en contra de la Sra. Irma Torres Rivera (señora Torres Rivera). Dado lo anterior, a Econo se le impuso responsabilidad por infringir la Ley contra el

discrimen en el empleo, Ley Núm. 100 de 30 de junio de 1959, según enmendada, 29 LPRA sec. 146 et seq. (Ley Núm. 100), y la Ley para prohibir el discrimen contra las personas con impedimentos físicos, mentales o sensoriales, Ley Núm. 44 de 2 de julio de 1985, según enmendada, 1 LPRA sec. 501 et seq. (Ley Núm. 44).

Como remedio, el foro primario ordenó que la señora Torres Rivera fuese reinstalada inmediatamente a su empleo. Además, concedió las cuantías siguientes:

> $100,456.00 más la doble penalidad por salarios dejados de devengar a razón de $290.00 semanales desde el 8 de febrero de 2012 hasta el presente para un total de $200,912.00 en salarios dejados de devengar; $10,000.00 en angustias mentales más la doble penalidad para un total de $20,000.00 en daños por angustias mentales y $27,614.00 en honorarios de abogados a ser pagados directamente a su representación legal.[16]

Como vemos, el Tribunal de Primera Instancia no realizó descuento alguno a la compensación de la señora Torres Rivera. No obstante, tras recurrir al Tribunal de Apelaciones, Econo logró que dicho foro descontara de la partida concedida por ingresos dejados de devengar todos los ingresos recibidos por la señora Torres Rivera durante el tiempo en que el despido estuvo vigente. Sin embargo, el foro apelativo intermedio realizó tal descuento luego de aplicada la doble penalidad contemplada en ambos estatutos laborales. Aún inconforme, Econo recurrió ante nos y arguyó

---

[16]Apéndice de certiorari, págs. 1634-1635.

que el descuento aludido debió efectuarse antes de la imposición de la doble penalidad.

La Opinión Mayoritaria acoge el planteamiento de Econo y resuelve que procede descontar <u>todos</u> los salarios generados por la señora Torres Rivera mientras estuvo vigente su despido. Para ello, centró su análisis en pautar cuál debe ser el cálculo matemático que deben realizar los tribunales para determinar la cuantía por concepto de salarios dejados de devengar a los que tiene derecho la persona despedida ilegalmente y en qué momento, si antes o después de la imposición de la doble penalidad, debe ser realizado el descuento.

Disiento del dictamen mayoritario por tres (3) fundamentos. En primer lugar, considero que no debemos penalizar a un obrero u obrera que, ante un despido ilegal, no se cruza de brazos y obtiene otros ingresos para paliar y mitigar los efectos de la súbita pérdida de su sustento económico. Es decir, soy del criterio que no procede efectuar ese descuento por afectar la compensación de una víctima de discrimen laboral.

En segundo lugar, constituye un grave error que el dictamen mayoritario catalogue como salarios deducibles de la compensación los beneficios por desempleo.

Por último, disiento de la fórmula matemática diseñada en la Opinión mayoritaria, ya que establece que se deben efectuar las referidas deducciones <u>antes</u> de imponer la doble penalidad requerida por ley.

Así pues, considero que el dictamen mayoritario le otorga al patrono tres (3) salvoconductos que permiten aminorar su responsabilidad civil tras un tribunal concluir que incurrió en prácticas discriminatorias en el contexto laboral.

A continuación, procedo a explicarlos en detalle.

**II**

**A.**

Como cuestión de umbral, estimo necesario establecer que, en casos de despidos ilegales entre los cuales se incluya una compensación por ingresos dejados de devengar, no se debe efectuar descuento alguno por los ingresos que obtuvo el empleado o la empleada agraviada por otros medios mientras duró su cesantía. En mis disensos Zambrana García v. ELA et al., 204 DPR 328, 343 (2020) (Opinión disidente del Juez Asociado señor Estrella Martínez) y Acevedo Sepúlveda v. Depto. Salud, 191 DPR 28, 53 (2014) (Opinión de conformidad en parte y disidente en parte del Juez Asociado señor Estrella Martínez), ya había adelantado esta postura. Allí, catalogué como una injusticia que un empleado cesanteado ilegalmente que no se cruzó de brazos y obtuvo ingresos privados para remediar los embates del despido, fuese castigado nuevamente al ordenar que se descuente lo devengado en ese ámbito.

Ciertamente, tales expresiones fueron emitidas en el contexto del despido ilegal de un empleado público que obtuvo ingresos en la empresa privada. Sin embargo, dicho

raciocinio no se limita al empleo público, sino que también debe extenderse al trabajador o trabajadora de la empresa privada. Cuando un empleado es despedido ilegalmente por su patrono, con frecuencia éste tiene que obtener otro trabajo para paliar los daños que supone la pérdida inesperada de su empleo. Siendo ese el caso:

> Entonces, **¿por qué deducir unos salarios que son el medio por el cual el empleado cesanteado ilegalmente tiene la posibilidad de cumplir con sus responsabilidades (personales y familiares) y aminorar los perjuicios causados por una acción ilegal de su patrono? ¿Por qué ensañarse con el empleado que actúa diligentemente y hace un esfuerzo razonable por remediar su situación? ¿Acaso la normativa vigente no fomenta que el empleado cesanteado se cruce de brazos y no busque atemperar los menoscabos sufridos? ¿Acaso esta actitud de falta de diligencia en mitigar los daños no ha sido rechazada constantemente por esta Curia?** (Énfasis suplido). <u>Acevedo Sepúlveda v. Depto. Salud</u>, supra, pág. 75.

Hoy reitero dichos planteamientos. Soy del criterio que no debe proceder descuento alguno en aquellas situaciones en las que un empleado despedido ilícitamente por un patrono en la empresa privada obtiene, por otros medios, ingresos para remediar los embates de esa ilegalidad. No albergo duda de que esta es la alternativa más adecuada y justiciera, puesto que aplicar esa deducción al "pago de los haberes dejados de percibir por razón de la cesantía ilegal a la que fueron expuestos los empleados, constituye penalizar a quien evita un daño mayor. Así, se

premia al que actúa ilegalmente y, peor aún, se atropella a quien vindica su derecho". Íd. Por esa razón, el proceder mayoritario tiene un efecto nocivo debido a que la persona despedida ilegalmente que obtiene otro empleo mientras se tramita su causa de acción, tendrá derecho a una compensación menor en comparación con una que no lo haga. Zambrana García v. ELA et al., supra, pág. 344 (citando a Hernández v. Mun. de Aguadilla, 154 DPR 199, 209 (2001)).

Por consiguiente, disiento de la premisa conceptual en la que se ancla la Opinión mayoritaria. Reafirmo que dicha situación resulta en una injusticia contra la trabajadora que ya sufrió el vejamen del despido ilegal. Ahora, la norma mayoritaria la castiga por ser proactiva y obtener un nuevo trabajo luego de una cesantía ilegal, mientras que el patrono que incumplió con la ley ve reducida su responsabilidad civil. Ello socava un importante disuasivo para que los patronos cumplan y respeten las leyes que proscriben el discrimen en el empleo. **En ese sentido, la postura mayoritaria premia al patrono que actúa ilícitamente y le concede un primer salvoconducto que le permite reducir su responsabilidad civil tras incurrir en prácticas discriminatorias.**

### B.

Según adelanté, la Opinión mayoritaria avala el cómputo que realizó el Tribunal de Apelaciones sobre los ingresos devengados por la señora Torres Rivera por concepto

de salario en otros empleos. Esta cantidad asciende a $53,307.00 y se desglosa de la manera siguiente:

- **Beneficios por desempleo - $3,458.00**
- Ingreso por trabajo - $45,049.00
    año 2014- $10,140.00
    año 2015- $10,920.00
    año 2016- $8,372.00
    año 2017- $8,372.00
    año 2018- $7,245.00
  Total= $45,049.00
- Confección de bizcochos años 2013-2018
    $4,800.00[17]

Al validar este cómputo, la Mayoría no advierte que en él se incluyeron los beneficios por desempleo. Este proceder, más allá de que abre la puerta para que se catalogue dicho beneficio como un salario devengado, atenta contra el carácter reparador que ostenta el beneficio por desempleo en nuestro ordenamiento jurídico. Veamos.

La Ley de seguridad de empleo de Puerto Rico, Ley Núm. 74 de 21 de junio de 1956, según enmendada, 24 LPRA sec. 701 et seq. (Ley de Desempleo), establece que el desempleo no constituye un salario, sino un beneficio. En ese sentido, la Exposición de Motivos del estatuto precitado establece que:

> El desempleo es, por lo tanto, materia de interés e incumbencia general que requiere la adopción por la Asamblea Legislativa de medidas adecuadas tendientes a evitar su desarrollo y a aliviar la carga que el mismo produce y que recae sobre el trabajador desempleado y su familia.[…] [É]ste objetivo puede obtenerse mediante el funcionamiento de oficinas públicas y gratuitas de empleo, adoptando métodos

---

[17]Íd., págs. 1795-1796.

apropiados para reducir al mínimo el auge del desempleo, y **mediante la acumulación sistemática de fondos durante períodos de empleo que permitan <u>el pago de beneficios</u> durante períodos de desempleo**, manteniendo así el poder adquisitivo, promoviendo la movilidad y aprovechamiento de las mejores destrezas de aquellos trabajadores desempleados, y **limitando las serias consecuencias sociales del desempleo.** (Énfasis suplido).

Queda claro que el programa de desempleo es un beneficio otorgado por el Estado producto de la implementación de una política pública dirigida a reducir la pesada carga que supone la pérdida del empleo. Así lo hemos reconocido consistentemente. <u>Castillo v. Depto. del Trabajo</u>, 152 DPR 91, 98 (2000); <u>Acevedo v. Western Digital Caribe, Inc.</u>, 140 DPR 452, 466 (1996). A fin de cuentas, el programa de desempleo se trata de un beneficio colateral que forma parte de la política social del Estado.

Asimismo, la postura que hoy defiendo es cónsona con la jurisprudencia interpretativa de las leyes antidiscrimen en el Derecho Laboral federal.

Al respecto, en <u>Marshall Field & Co. v. N.L.R.B</u>, 318 US 253 (1943) (<u>Per Curiam</u>), un trabajador cesanteado discriminatoriamente recibió beneficios de desempleo durante la pendencia del pleito. Posteriormente, el patrono alegó que dichos ingresos debían ser descontados de la penalidad impuesta en su contra. Sin embargo, el Tribunal Supremo federal, interpretando la ley de compensación por desempleo del Estado de Illinois, concluyó que los

beneficios de desempleo obtenidos por el trabajador cesanteado no constituían ingresos para efectos de las definiciones establecidas por la <u>National Labor Relations Board</u>. Por tanto, determinó que no procedía tal deducción.[18]

Posteriormente, en <u>N.L.R.B. v. Gullett Gin Co.</u>, 340 US 361 (1951), el Tribunal Supremo federal, amparado en el precedente de <u>Marshall Field & Co. v. N.L.R.B</u>, supra, validó que no se caracterizaran como salario los beneficios de desempleo para propósitos de la compensación a ser pagada por un patrono que incurrió en prácticas discriminatorias. De este modo, determinó que:

> [T]he payments to the employees were not made to discharge any liability or obligation of respondent, **but to carry out a policy of social betterment for the benefit of the entire state. We think these facts plainly show the benefits to be collateral. It is thus apparent from what we have already said that failure to take them into account in ordering back pay does not make the employees more than 'whole' as that phrase has been understood and applied.** (Énfasis suplido). Íd., págs. 364-365 (citas internas omitidas).

Ahora bien, a pesar de ambos dictámenes, las cortes apelativas federales están divididas en cuanto a si debe ser mandatorio o discrecional que se tomen en consideración

---

[18]Así, el Tribunal Supremo federal concluyó que:

> We agree with the court below that the benefits received under the state compensation act were plainly not 'earnings' which, under the terms of the Board's order, could be deducted from the back pay awarded. <u>Marshall Field & Co. v. N.L.R.B</u>, supra, pág. 255.

los beneficios por desempleo al momento de computar la compensación por ingresos dejados de devengar.[19] Sin embargo, la norma mayoritaria es tajante en cuanto a que no procede catalogar como salario los beneficios de desempleo obtenidos por el trabajador víctima de discrimen por razón de edad. Véanse, Gaworski v. ITT Commercial Fin. Corp., 17 F.3d 1104 (8th Cir. 1994); Brown v. A.J. Gerrard Mfg. Co., 715 F.2d 1549 (11th Cir. 1983) (Per Curiam); Rasimas v. Michigan Dept. of Mental Health, 714 F.2d 614 (6th Cir. 1983); Kauffman v. Sidereal Corp., 695 F.2d 343, (9th Cir. 1982) (Per Curiam).[20]

Sobre el particular, considero persuasivo lo resuelto por la Corte de Distrito Federal de Puerto Rico en Toro v. Sánchez, 141 F. Supp.2d 195 (2001). En dicho caso, el patrono pretendió que se le descontara del monto que tendría que compensar al trabajador ilegalmente cesanteado lo que éste había devengado por concepto de seguro social, beneficios del Programa de Asistencia Nutricional (PAN) y el seguro por desempleo. En lo pertinente, luego de interpretar el propósito y la naturaleza de la Ley de

---

[19]Véase, I. Torres Canales, ¿Procede el descuento del beneficio por desempleo a un back pay?, 88 Rev. Jur. UPR 586, 592-594 (2019); T. Lee, Deducting Unemployment Compensation and Ending Employment Discrimination: Continuing Conflict, 43 Emory L.J. 325 (1994).

[20]Véase, además, U.S. Equal Employment Opportunity Comm'n v. Consol Energy, Inc., 860 F.3d 131 (4th Cir. 2017); Dailey v. Societe Generale, 108 F.3d 451 (2d Cir. 1997); Thurman v. Yellow Freight Sys., Inc., 90 F.3d 1160 (6th Cir. 1996); Craig v. Y & Y Snacks, Inc., 721 F.2d 77 (3d Cir. 1983).

Desempleo, supra, el tribunal resolvió que, de la exposición de motivos del estatuto, quedaba claro que no procedía dicho descuento. Fundamentó su dictamen en que éstos eran beneficios producto de una política pública del Estado. Además, resaltó el hecho de que los fondos del desempleo son administrados por una agencia gubernamental que tiene la discreción de decidir cómo distribuir los fondos, a quién otorgárselos y en qué condiciones. 29 LPRA secs. 703-704. Por ello, concluyó que:

> **[T]hese payments are not made to discharge any liability or obligation of the defendant, but to carry out an independent policy of social betterment for the benefit of the entire state.**
>
> **In view of the above, we conclude that deducting unemployment compensation will actually make the defendant-employer more than whole.** "If an employer who violates the law is allowed to use payments of unemployment compensation to offset its liability, it is put in a better position than an employer who does not violate the law but still pays its unemployment tax to the state". (Énfasis suplido). Toro v. Sánchez, supra, pág. 199 (citas omitidas).

Dicho raciocinio lo debimos aplicar a la controversia que hoy adjudicamos. Resulta evidente que la otorgación del beneficio de desempleo a la señora Torres Rivera no es producto de una obligación indemnizatoria del patrono; más bien, es el resultado de una política pública dirigida a paliar los efectos nocivos del desempleo en nuestra sociedad. Por tal razón, hubiese aplicado la doctrina de la

fuente colateral de ingresos.[21] Es decir, hubiese resuelto, además de lo explicado en el acápite anterior, que un patrono que incurre en prácticas discriminatorias en el entorno laboral no podrá aprovecharse de que el empleado perjudicado haya recibido los beneficios por desempleo que la comunidad extiende a los necesitados.

De hecho, recientemente en Santiago Ortiz v. Real Legacy Assurance Company, Inc. y otros, 2021 TSPR 12, 205 DPR __ (2021), un caso sobre despido discriminatorio, aplicamos la doctrina de fuente colateral de ingresos para evitar que se catalogaran como salarios el pago efectuado por el patrono por concepto de liquidación de vacaciones, el plan de ahorros y el pago de la pensión prematura. Basado en lo anterior, reiteramos la interpretación restrictiva que hemos establecido del concepto "salario" al enfrentarnos a situaciones en donde se pretende catalogar como tal otros tipos de ingresos recibidos por un empleado ilegalmente cesanteado para efectos de cuantificar el monto de una indemnización al amparo de las leyes laborales. A

---

[21] La doctrina de la fuente colateral de ingresos establece que, como regla general, el causante de un daño estará impedido de deducir del importe de la indemnización que se le ha impuesto la compensación o beneficios que el perjudicado haya recibido de una tercera persona o entidad. Futurama Import Corp. v. Trans Caribbean, 104 DPR 609, 612-613 (1976). Ello se fundamenta en que la relación del tercero que concede beneficios al perjudicado es completamente distinta a la que tiene éste con el causante de sus daños. Íd. De este modo, el que causa el daño está obligado a indemnizar mientras que lo concedido por el tercero está abonado por otro título. Nieves Cruz v. U.P.R., 151 DPR 150, 165 (2000).

esos efectos, enfatizamos que "**sólo el trabajo realizado mediante el esfuerzo físico o intelectual es compensable con la indemnización o penalidad adicional**. Esta norma no queda afectada por la amplitud retórica que pueda atribuirse al vocablo 'salarios'". (Énfasis suplido). Íd., pág. 23 (citando a J.R.T. v. Ventanas Yagüez, Inc., 103 DPR 933, 938 (1975)). En tal análisis, citamos con aprobación el caso de Toro v. Sánchez, supra, y establecimos que nuestro dictamen era "similar a las expresiones que el Tribunal Federal para el Distrito de Puerto Rico ha esbozado en torno a las deducciones realizadas en escenarios que involucran un despido". Íd., pág. 25. Ésto, pues, no podemos convertir una legislación llamada a favorecer al empleado en un privilegio para el patrono. Íd., págs. 24-25 (citando a García Pagán v. Shiley Caribbean, 122 DPR 193, 212 (1988)).

Por ello, discrepo del análisis efectuado por el Tribunal de Apelaciones y validado por la Mayoría. El precedente que hoy se establece es inconsistente con nuestros pronunciamientos previos. Además, desvirtúa el propósito de la política pública establecida en la Ley de Desempleo, supra.

Por consiguiente, procedía eliminar de la ecuación matemática creada por la Opinión mayoritaria los $3,458.00 que recibió la señora Torres Rivera por concepto del desempleo. No lo hicimos. Por tanto, disiento y expreso mi preocupación por las consecuencias nocivas que tendrá el dictamen sobre las reclamaciones de ésta y los demás

empleados en similar situación. **Con este proceder, queda configurado el segundo salvoconducto otorgado al patrono que le permite aminorar su responsabilidad civil tras incurrir en prácticas discriminatorias.**

**C.**

Finalmente, disiento de la fórmula establecida en la ponencia mayoritaria, ya que establece que los salarios devengados por la empleada discriminada, mientras estuvo cesanteada, serán descontados <u>antes</u> de la imposición de la doble penalidad requerida por ley. Ello, bajo el pretexto de no querer alterar la naturaleza reparadora de las leyes antidiscrimen en el empleo. Discrepo de tal aseveración. Me explico.

Los estatutos antidiscrimen en cuestión conceden remedios similares a la víctima de discrimen y contemplan iguales penalidades contra el patrono que discrimina. Véanse, Art. 13, Ley Núm. 44, <u>supra</u>, 1 LPRA sec. 511; Art. 1, Ley Núm. 100, <u>supra</u>, 29 LPRA sec. 146. El principal remedio es la reposición en el empleo. Además, ambos estatutos contemplan la concesión de daños más "una suma igual al doble del importe de los daños que el acto haya causado al empleado o solicitante de empleo". Íd. Ésto es lo que denominamos la doble penalidad. Como Curia, hemos sido diáfanos en que **la imposición doble de dicha compensación es un elemento punitivo contra el patrono para disuadirlo de cometer actos discriminatorios.** <u>Maldonado v. Banco Central Corp.</u>, 138 DPR 268, 274 (1995); <u>Guardiola</u>

Álvarez v. Depto. de la Familia, 175 DPR 668, 681-683 (2009).

En ese sentido, reiteramos que la imposición de la doble penalidad no tiene como objetivo exclusivo reparar un daño. Más bien, se trata de una medida punitiva dirigida al patrono cuyo objetivo es disuadirle de cometer otros actos discriminatorios en el futuro. Nótese que la intención legislativa con la aprobación de la doble penalidad fue castigar al patrono que discrimina. Por tal razón, la hemos denominado la doble **penalidad.** Si el objetivo hubiese sido meramente reparar un daño, la doble penalidad no tendría sentido jurídico.

Sin embargo, la Opinión avalada por una mayoría de esta Curia debilita este objetivo al permitirle al patrono beneficiarse de los referidos descuentos que se le realizarán a la empleada ilegalmente cesanteada, antes de la imposición de la doble penalidad. Con ello, diluye el componente punitivo de ambos estatutos y crea una fórmula que le permite al patrono beneficiarse del diligente proceder de un empleado agraviado. **De este modo, queda establecido un tercer salvoconducto cuyo efecto es la reducción de la responsabilidad civil de un patrono que incurre en acciones discriminatorias.**

En esa faena, este Tribunal hilvana una interpretación restrictiva de las leyes protectoras laborales, lo cual es contrario a nuestro deber hermenéutico de interpretarlas liberalmente cuando favorecen al empleado y

restrictivamente cuando le afectan. Romero et als. v. Cabrer Roig et als., 191 DPR 643, 653 (2014). La postura mayoritaria invierte estas premisas interpretativas desacertadamente.

Asimismo, debo resaltar que nada en el texto de los estatutos en cuestión nos llevaban a resolver de la forma en que lo hizo la Mayoría. De hecho, el lenguaje del Artículo 15 de la Ley Núm. 44, supra, nos debió conducir a la conclusión contraria. Esto, pues, el artículo precitado establece textualmente que debemos interpretar la ley de forma liberal y amplia cuando ello fomente el fin social de proteger, defender y vindicar los derechos de las personas con impedimentos. 1 LPRA sec. 511b; Guardiola Álvarez v. Depto. de la Familia, supra, pág. 687; Morales Bengochea v. Banco Popular, 173 DPR 742, 760 (2008) (Sentencia).

Esta norma hermenéutica no nos es ajena, ya que hemos construido una norma interpretativa similar en el contexto laboral en general. Cordero Jiménez v. UPR, 188 DPR 129, 139 (2013). Así, por ejemplo, en Santiago Ortiz v. Real Legacy Assurance Company, Inc. y otros, supra, pautamos que, en aras de otorgar un remedio completo al empleado agraviado y en armonía con nuestras normas hermenéuticas laborales, debíamos efectuar ciertas deducciones luego de imponer la doble penalidad. Nada nos impedía invocar ese precedente para resolver similarmente la controversia ante nos.

Por tanto, aun si para propósitos argumentativos aceptamos que correspondía efectuar deducciones a la compensación por ingresos dejados de devengar, lo cual rechazo, una interpretación liberal de ambos estatutos hubiese forzado a concluir que éstas deberían efectuarse luego de calcular la doble penalidad requerida por ley. Resolver de otra forma, no sólo va en contra de nuestra hermenéutica laboral, sino que resulta en una injusticia contra la empleada que ya sufrió el vejamen del despido ilegal. Además, socava el objetivo de la doble penalidad como un importante disuasivo para que los patronos respeten las leyes que proscriben el discrimen laboral. Hernández v. Mun. de Aguadilla, supra, pág. 217 (Opinión disidente del Juez Asociado señor Fuster Berlingeri).

En definitiva, la norma que hoy se establece difumina los objetivos de nuestro ordenamiento laboral, en específico, los de aquellas normas relacionadas al discrimen en el empleo. Ello tiene el efecto de convertir una legislación llamada a proteger y favorecer al empleado en un privilegio para el patrono que discrimina al concederle distintos salvoconductos que le permiten reducir su responsabilidad civil tras incurrir en actuaciones discriminatorias en el empleo. Ante ello, respetuosamente disiento.

### III

De conformidad con los fundamentos expuestos, reafirmo que no procedía efectuar descuento alguno a la compensación

otorgada a la señora Torres Rivera. Por lo tanto, debimos reafirmar los remedios concedidos por el Tribunal de Primera Instancia. **Ello constituía la alternativa más justiciera y cónsona con el Derecho Laboral aplicable para los empleados y las empleadas que acuden al Poder Judicial en búsqueda de la completa reparación del agravio que supone ser despedido ilícitamente a consecuencia de un acto discriminatorio. Sin embargo, el dictamen avalado por una Mayoría de este Tribunal hace lo contrario y premia al patrono que incurre en prácticas discriminatorias en el empleo. Lo anterior, no obstante, se efectúa sobre las espaldas de los sujetos de derecho que estamos llamados a proteger y vindicar jurídicamente: las víctimas de discrimen en el empleo.**

Por consiguiente, no me queda más que distanciarme de la postura acogida por la Mayoría y disentir.

Luis F. Estrella Martínez
Juez Asociado